The CADLE COMPANY and Cadleway Properties, Inc., Appellants,

v.

Mary Ester ORTIZ and David Ortiz, Appellees.

No. 13–06–282–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

May 17, 2007.

832

Ann E. Webb, Mark A. Kerstein, Buck, Keenan, Gage, Little & Lindley, LLP, Houston, for appellants.

David Roberts, Roberts, Roberts & Odefey, Wanda Roberts, Garner, Roberts & Roberts, Port Lavaca, for appellees.

Before Justices YAÑEZ, RODRIGUEZ, and BENAVIDES.

## OPINION

Opinion by Justice BENAVIDES.

This appeal arises from a wrongful foreclosure lawsuit. Mary Ester Ortiz and David Ortiz, appellees, obtained a judgment invalidating a lien on their homestead held by The Cadle Company and Cadleway Properties, Inc. ("Cadle"), appellants. The trial court declared a wrongful foreclosure and also awarded the Ortizes attorneys' fees. The issues presented are (1) whether a mechanic's lien against a marital homestead is valid if the lien documents are not signed by both spouses, and (2) whether attorneys' fees are available in a foreclosure case wherein title ultimately depends upon a deed's construction. We hold that the mechanic's lien is invalid, and attorneys' fees are available. Accordingly, we affirm the district court's judgment on both issues.

### I. BACKGROUND

Mary Ester Ortiz and David Ortiz married each other in 1979 and divorced later that year. They remarried in 1989 and have been continuously married to each other since then.[1] On February 2, 1994, Ms. Ortiz acquired a house, but she did not include her husband's name on the assumption deed. Ms. Ortiz deliberately omitted her husband's name in an effort to protect the property from possible creditors who sought child support payments from Mr. Ortiz. The couple has occupied the home as their marital homestead from 1994 until the present.

On June 13, 1996, after multiple meetings with a salesman named Dean Bostick, the Ortizes contracted for improvements to their home with National Home Services ("NHS"). Ms. Ortiz signed a note, a Contract for Labor and Materials, and a trust deed for the improvements. As she had done on the original assumption deed, she again omitted her husband's name on the documents.

In order to finance the home improvements, Ms. Ortiz applied for credit from the Department of Housing and Urban Development ("HUD"). She is explicitly

---

1. Although Mr. and Ms. Ortiz have been continuously married since 1989, tax returns filed in the record indicate a slightly more erratic situation. In 1994, the couple filed jointly. In 1995, Ms. Ortiz filed as an unmarried single. And in 2003, Ms. Ortiz filed as "head of household."

marked as "unmarried" on the HUD credit application. According to Ms. Ortiz, this was an error attributable to Mr. Bostick, who completed the application for her after she signed it in blank. Ms. Ortiz also claimed that Mr. Bostick had met her husband and should have known that they were a married couple.[2]

On December 23, 1998, NHS conveyed the note and the trust deed to Cadle. After making payments to Cadle for several years, the Ortizes defaulted. Cadle foreclosed on the Ortizes' home on June 1, 2004.

The Ortizes then filed suit against Cadle, alleging wrongful foreclosure and seeking attorneys' fees under the Texas Uniform Declaratory Judgments Act ("DJA"). TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 2006). The Ortizes argued that the foreclosure ought to be rescinded because a homestead exemption attached to the property. Cadle pleaded an affirmative defense, conceding that the property was a homestead, but arguing that the Ortizes had waived their homestead rights by committing a fraudulent misrepresentation intended to deceive creditors. After a bench trial, the court invalidated Cadle's lien and declared a wrongful foreclosure. The court also awarded the Ortizes $23,775.92 in attorneys' fees. Findings of fact and conclusions of law were not filed, nor did Cadle request them. Cadle now appeals.

## II. STANDARD OF REVIEW

When neither findings of fact nor conclusions of law have been filed or requested, the judgment of the trial court after a bench trial implies all necessary findings of fact to support itself. *Schoeffler v. Denton*, 813 S.W.2d 742, 745 (Tex. App.-Houston [14th Dist.] 1991, no writ).

A trial court's implied findings of fact in a bench trial have the same force and dignity as a jury's verdict upon jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). Therefore, the trial court's implied findings are similarly reviewed for legal and factual sufficiency of the evidence. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex.2005) (legal sufficiency of evidence is to be reviewed in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not); *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996) (fact findings must only be overturned if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust).

If a party is challenging a finding regarding an issue upon which that party had the burden of proof, the moving party must demonstrate that the adverse finding is against the "great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001) (per curiam). In reviewing a challenge that the jury finding is against the great weight and preponderance of the evidence, we must first examine the record to determine if there is some evidence to support the finding. *Id.* at 241. If such evidence exists, we must then determine, in light of the entire record, whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.* We may not disregard the finding of the trial court and substitute our own finding unless the evidence conclusively establishes a different finding. *Ponce v. Sando-*

---

2. *Mr. Bostick could not be located for trial* and was unable to testify about these matters.

*val,* 68 S.W.3d 799, 806 (Tex.App.-Amarillo 2001, no pet.).

■ Finally, the determination of whether attorneys' fees are available in a particular case is a question of law, which we review *de novo. Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 94 (Tex.1999).

### III. THE VALIDITY OF THE LIEN

■ The State of Texas famously recognizes one of the broadest homestead exemptions in the United States. *See* Jerry Patterson, *Home Equity Reform in Texas,* 26 ST. MARY'S L.J. 323, 324 (1994) ("the concept of Texas homestead protection has grown to near-mythical proportions"). Homestead rights have traditionally enjoyed great protection in Texas jurisprudence, and statutes which affect homestead rights are liberally construed to protect the homestead. *See Florey v. Estate of McConnell,* 212 S.W.3d 439, 443 (Tex.App.-Austin 2006, pet. denied).

Nevertheless, exceptions to the homestead exemption do exist. Among them, the Texas Constitution provides that a marital homestead is "protected from forced sale for the payment of all debts except for ... work and material used in constructing new improvements thereon if ... the work and material are contracted for in writing, *with the consent of both spouses.*" TEX. CONST. art. XVI, § 50(a)(5)(A) (emphasis added).

■ Under the existing homestead law, Cadle's lien on the Ortiz home must be found invalid because it depends upon three documents—the assumption deed, the note, and the trust deed—that are not signed by both Mr. and Ms. Ortiz as the Texas Constitution explicitly requires. Cadle attempts to overcome the two-spouse signature requirement with an affirmative defense: Cadle argues that Ms. Ortiz misrepresented her marital status by omitting Mr. Ortiz's name from the lien documents, and thus a finding that the Ortizes did not waive their homestead rights by deliberately misrepresenting creditors is against the great weight and preponderance of the evidence. We disagree.

■ Texas law recognizes that homestead protection can dissolve if the owners deliberately misrepresent their marital status in order "to defeat the rights of an innocent party who, in good faith, without notice, for valuable consideration, has acquired valid liens." *Nat'l Bond & Mortgage Corp. v. Davis,* 60 S.W.2d 429, 434 (Tex.1933). Such an assertion of misrepresentation is an affirmative defense upon which the defendant bears the burden of proof. *Texas Farmers Ins. Co. v. Murphy,* 996 S.W.2d 873, 879–80 (1999). If an individual affirmatively misrepresents himself or herself on documents as single when he or she is married, a question arises concerning whether the couple's homestead rights have been waived. *Brown v. Bank of Galveston, Nat'l Ass'n,* 963 S.W.2d 511, 515 (Tex.1998).

In *Brown,* for example, Vincent Brown, a married man, purchased a lot and built a home in Galveston by signing earnest money contracts as "V.A. Brown, a single man" and "Vincent A. Brown, a single man." *Id.* at 512. He made no mention of his wife, Hyacinth, on any of the real property documents. *Id.* When the holder of a mechanic's lien attempted to enforce the lien on the property, Brown claimed a violation of Hyacinth's homestead exemption. *Id.* However, Brown did not obtain a jury question regarding Hyacinth's homestead rights. *Id.*

On appeal, Brown was required to show that Hyacinth's homestead rights were conclusively established by the record. *Id.* The supreme court rejected Brown's argu-

ment because "Brown's statement that he was 'a single man' on at least three of the documents admitted in this case is enough to raise a fact question concerning Hyacinth's homestead rights." *Id.* at 515.

 *Brown* suggests that homestead protection is called into question when a person affirmatively lies about his or her marital status. *See id.* However, although *Brown's* holding prohibits misrepresentation, it does not imply that a person is required to list the name of his or her spouse on real property documents in order for homestead status to attach. Texas law is clear that possession of a homestead interest is not dependent upon ownership; a person is permitted to hold homestead rights in his or her spouse's separate property. TEX. FAM.CODE ANN. § 5.001 (Vernon 2006). A contention that an instrument (such as a deed) is void under homestead laws may be asserted by any person whose homestead rights are affected, regardless of whether the person is a signed party to the instrument. *Florey,* 212 S.W.3d at 444.

The evidence shows that the home was purchased during the marriage and that the Ortizes occupied the home as their homestead. Rather than represent herself as "unmarried" or "single" on any of the documents Cadle relied upon, Ms. Ortiz merely signed her name and made no mention of her husband.[3] This is different than, for example, the affirmative misrepresentation of the married man in *Brown* who falsely signed his name "Vincent Brown, a single man." *See Brown,* 963 S.W.2d at 512. Moreover, because a person may hold a homestead interest in his or her spouse's separate property, it is not necessary to have one's name on real property documents in order to maintain a homestead interest in the property. TEX. FAM.CODE ANN. § 5.001. Thus, the fact that Mr. Ortiz's name was not on the assumption deed, note, or trust deed does not mean that he lacks a homestead interest in the Ortiz household. Regardless of Cadle's ability to defeat Ms. Ortiz's homestead exemption, it has shown nothing to defeat Mr. Ortiz's homestead exemption.

We hold, therefore, that Cadle has not demonstrated that the great weight and preponderance of the evidence favors a reversal of the trial court's implied finding that the Ortizes did not waive their homestead rights. The mechanic's lien asserted by Cadle against the Ortiz homestead is invalid because the relevant documents do not meet the statutory requirement of having been signed by both spouses. Cadle's asserted lien does not supersede the Ortizes' homestead exemption, and thus the foreclosure on the home was wrongful.[4]

## IV. TRESPASS TO TRY TITLE

Having found that Cadle wrongfully foreclosed on the Ortiz homestead, we now turn to the question of whether this wrongful foreclosure suit is a "trespass to try title" or an action properly brought under the DJA. TEX. CIV. PRAC. & REM.

---

**3.** Cadle relied on the assumption deed, note, and trust deed. The only document on which Ms. Ortiz appears to have affirmatively misrepresented herself as "single" was the HUD credit application. Cadle does not argue that it is entitled to rely upon the credit application, so we need not address whether this is a misrepresentation sufficient to vindicate Cadle's lien.

**4.** The Ortizes also allege that the home improvements began before the relevant documents had been signed and processed—an allegation to which Cadle never responds. We do not reach this argument, however, because we have already found the lien invalid for not meeting the two-spouse signature requirement. TEX.R.APP. P. 47.1. Moreover, the argument was inadequately briefed. TEX. R.APP. P. 38.1(h), 38.2(a)(2).

CODE ANN. § 37.001–.011 (Vernon 2006). The answer to this question determines whether attorneys' fees are available. *Martin v. Amerman,* 133 S.W.3d 262, 264 (Tex.2004).

▉ Under the Texas Property Code, a trespass to try title is used to determine title to lands, tenements, or other real property. TEX. PROP.CODE ANN. § 22.001 (Vernon 2006). An action under the property code is different from an action under the DJA, which provides that "a person interested under a deed ... may have determined any question of construction or validity arising under the instrument ... and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM.CODE ANN. § 37.004. The recovery of attorneys' fees under a trespass to try title is barred because it is not provided for by the property code. *Martin,* 133 S.W.3d at 264. In contrast, the DJA specifically allows for recovery of attorneys' fees. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009. The Texas Supreme Court requires courts to distinguish between the two types of actions, holding that a party may not seek attorneys' fees by artfully pleading a trespass to try title action under the DJA. *Martin,* 133 S.W.3d at 267.

In *Martin,* the supreme court held that cases which "necessarily involve the question of title," such as boundary disputes, are considered trespass to try title actions. *Id.* Although the supreme court sought to clarify the conceptual difference between trespass to try title suits and DJA suits with this language, the distinction it promulgated has been difficult to apply in practice because construing the terms of contracts and deeds frequently implicates the ultimate issue of title. *See Roberson v. City of Austin,* 157 S.W.3d 130, 135 (Tex. App.-Austin 2005, pet. denied) (describing the post-*Martin* law as "contradictory and confused").

Pre-*Martin* authority suggests that an action seeking to construe the terms of a contract or deed ought to be pleaded under the DJA even if the action's resolution is effectively a decision on title. *Brush v. Reata Oil & Gas Corp.,* 984 S.W.2d 720, 730 (Tex.App.-Waco 1998, pet. denied). We must decide whether that principle still applies in the wake of *Martin.*[5]

▉ In the present case, the validity of Cadle's mechanic's lien could not be ascertained without first construing the validity of the assumption deed and the contracts signed by Ms. Ortiz. Assessing the validity of these documents is explicitly a stated function of the DJA. TEX. CIV. PRAC. & REM.CODE ANN. § 37.004. While it is true that the dispute over the deed's validity ultimately implicates title, much of contract and deed construction implicates title, and that does not indicate that all such cases are trespass to try title suits. Such an interpretation would render the DJA meaningless. *Rodriguez v. Tex. Workforce Comm'n,* 986 S.W.2d 781, 783 (Tex.App.-Corpus Christi 1999, pet. denied) (holding

---

5. We have cited *Martin* in the past, but this is the first time we address whether a wrongful foreclosure "necessarily involves the question of title" and must therefore be classified as a trespass to try title action. *See Garza v. Gonzales,* No. 13–05–200–CV, 2006 WL 3317732, at *7, 2006 Tex.App. LEXIS 9978, at *19 (Tex.App.-Corpus Christi Nov. 16, 2006, no pet.) (mem.op.) (holding that boundary disputes cannot be resolved using the DJA); *Americo Energy Res., L.L.C. v. State,* No. 13–05– 460–CV, 2006 WL 177626, at *6, 2006 Tex. App. LEXIS 661, at *20 (Tex.App.-Corpus Christi Jan. 26, 2006, no pet.) (mem.op.) (holding that the settlement/clarification of easement rights is not a trespass to try title because it is specifically provided for by the DJA); *Aguillera v. John G. & Marie Stella Kenedy Mem'l Found.,* 162 S.W.3d 689, 698 (Tex.App.-Corpus Christi 2005, pet. denied) (holding that competing claims to land ownership constitute a trespass to try title).

that "courts are to construe language used in statutes so as to harmonize all relevant laws, not create conflict"). The central issue in this case was not a "cloud on title" as the trespass to try title action is intended to address; the issue was instead the lien's validity, which could only be resolved by declaration of the trial court. Analytically, then, the case is properly pleaded and evaluated under the DJA.

This is the type of analysis that courts undertook before *Martin*, and we see no indications that the *Martin* holding changed this. *Martin* does not hold that all property disputes are trespass to try title suits; it merely clarifies the analytical framework that courts must apply when deciding whether a suit is a trespass to try title. *Martin*, 133 S.W.3d at 267. The Ortizes properly pleaded their suit under the DJA and are now entitled to a recovery of attorneys fees from Cadle. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009.

## V. CONCLUSION

The great weight and preponderance of the evidence in this case conclusively establishes that the Ortizes did not waive their homestead interest by misrepresentation, and thus the district court's decision to invalidate Cadle's lien because it was not consented to in writing by both spouses must be upheld. Additionally, the Ortizes properly pleaded their claims under the DJA, and established their right to attorneys' fees. The judgment of the district court as to both the validity of the lien and the award of attorneys' fees is AFFIRMED.

Dissenting Opinion by Justice LINDA REYNA YAÑEZ.

YAÑEZ, Justice, dissenting.

The majority holds that: (1) the mechanic's lien asserted by Cadle is invalid because it was signed only by Ms. Ortiz, not by Mr. Ortiz, as required by the Texas Constitution; and (2) because Cadle failed to defeat Mr. Ortiz's homestead claim, the foreclosure was wrongful. I conclude that because Ms. Ortiz's misrepresentations created the facts supporting the argument that the lien is invalid, the Ortizes are estopped from denying the validity of the lien. Accordingly, I respectfully dissent.

### Standard of Review and Applicable Law

The majority has correctly stated the applicable standard of review. Cadle asserted the affirmative defense that the Ortizes were estopped from denying the validity of the lien because Ms. Ortiz intentionally misrepresented that she was the sole owner of the home. Thus, Cadle had the burden to prove that the Ortizes were estopped from denying the validity of the lien.[1] The ultimate issue of whether Cadle had a valid lien on the property owned by the Ortizes in light of the asserted homestead status is a question of law.[2]

"Texas law recognizes two different mechanic's liens: the statutory mechanic's lien and the constitutional mechanic's lien."[3] "It is well-settled that neither a

---

1. *See Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex.1999) (noting that party asserting affirmative defense of fraud had burden to plead, prove, and secure findings to sustain defensive plea of fraud).

2. *Florey v. Estate of McConnell*, 212 S.W.3d 439, 445 (Tex.App.-Austin 2006, pet. denied).

3. *Cavazos v. Munoz*, 305 B.R. 661, 668 (Bankr.S.D.Tex.2004) (citing *Apex Financial Corp. v. Brown*, 7 S.W.3d 820, 830 (Tex.App.-Texarkana 1999, no writ) ("[a] statutory lien exists through compliance with the applicable statutes, while a constitutional lien arises by virtue of the Constitution without the aid of the statutes.") (citations omitted)). After re-

constitutional lien nor a statutory mechanic's lien may be enforced against a homestead unless a written contract for the work and material to be supplied is signed by all owners prior to the work commencing and is recorded."[4] The issue in the present case is the absence of Mr. Ortiz's signature on the written contract, a requirement for both a constitutional and statutory lien.[5] Thus, it is unnecessary to determine whether the lien is a constitutional or statutory mechanic's lien.

The doctrine of equitable estoppel or estoppel in pais is grounded on the condition that justice forbids one to gainsay his own acts or assertions.[6] "[T]he formal equitable estoppel or estoppel in pais— arises when one is not permitted to disavow his conduct which induced another to act detrimentally in reliance upon it."[7] "[O]ne who by his conduct has induced another to act in a particular manner should not be permitted to adopt an inconsistent position and thereby cause loss or injury to the other."[8] Thus, it is well settled that estoppel may arise from conduct or from a failure to act.[9]

An assignee of notes and lien given upon a homestead (here, Cadle) may not enforce them if it appears that the assignee knew, or had such notice as would put him upon inquiry, which, if pursued, would have disclosed to him that the property was a homestead.[10]

## Analysis

The Ortizes argue that because Mr. Ortiz did not sign the contract, a proper lien did not attach to the property and the foreclosure was therefore wrongful. They also argue that the Assumption Deed, which identifies only Ms. Ortiz as the purchaser of the property, is not deceptive.

At the bench trial, Ms. Ortiz testified that at the time she purchased the property and executed the Assumption Deed (February 24, 1994), she was married to Mr. Ortiz, and she assumed that the property was community property.[11] Ms. Ortiz

---

viewing the cases construing the constitutional and statutory provisions pertaining to mechanic's liens, I agree with the observation of the *Cavazos* Court that "the body of case law on such liens is not a model of clarity, and it is doubtful that all the germane cases could be reconciled." *Id.* at 668.

4. *Id.* at 684 n. 33.

5. TEX. CONST. art. XVI, § 50(a)(5); TEX. PROP. CODE ANN. § 53.254 (Vernon 2007). Article 16, section 50 of the Constitution was amended in 1997, effective January 1, 1998, to add additional requirements, and amended again in 2001, effective January 1, 2002. Section 53.254 of the property code was also amended in 1997, effective September 1, 1997. *See* Act of May 31, 1997, 75th Leg., R.S., ch. 526, § 23, 1997 Tex. Gen. Laws 1887. The Contract for Labor and Materials and Trust Deed at issue in the present case was executed on June 13, 1996, and is therefore governed by the law prior to the amendments. However, because the subsequent constitutional and statutory amendments are both inapplicable and irrelevant to my analysis of the issues, it is unnecessary to address them. *See Cavazos,* 305 B.R. at 676–77 (explaining effect of amendments).

6. *Wallace v. McKinzie,* 869 S.W.2d 592, 595 (Tex.App.-Amarillo 1993, writ denied) (quoting *Campbell v. Pirtle,* 790 S.W.2d 372, 374 (Tex.App.-Amarillo 1990, writ denied)).

7. *Id.* (quoting *Campbell,* 790 S.W.2d at 374).

8. *Id.* (quoting *Fabrique, Inc. v. Corman,* 796 S.W.2d 790, 792 (Tex.App.-Dallas 1990, writ denied)).

9. *Id.* (citing *Clear Lake Dev. Corp. v. Blackstock,* 450 S.W.2d 678, 684 (Tex.App.-Houston [14th Dist.] 1970, writ ref'd n.r.e.)).

10. *Fest v. Williams,* 89 S.W.2d 1072, 1074 (Tex.Civ.App.-San Antonio 1935, no writ).

11. Ms. Ortiz assumed correctly that because the property was purchased during her mar-

testified that she intentionally listed herself as the sole owner of the property on the deed in order to avoid losing the house due to potential back child support owed by Mr. Ortiz. When asked if it was her "intention to mislead the people of the State of Texas as to the true ownership so [she] could avoid losing a house for potential back child support," Ms. Ortiz responded, "Yes." The "Credit Application for Property Improvement Loan" identifies the "applicant" as Ms. Ortiz and states her marital status as "unmarried." [12] The document bears Ms. Ortiz's signature, directly below a statement that the applicant certifies the information in the document as "true, accurate, and complete." Another statement appears at the bottom of the application, noting, "If this application is prepared by someone other than the applicants, that person must sign below. I certify that the statements made herein are based upon information given to me by the applicants and are true, accurate and complete to the best of my knowledge and belief." The form is signed by "Rose Gomez," representing National Home Services. Ms. Ortiz testified that when she signed the application, it had not been filled out. She denied telling Dean Bostic, the National Home Services salesman, that she was single.

The Contract for Labor and Materials and Trust Deed ("Trust Deed"), executed in connection with the loan for the home improvements on June 13, 1996, identifies only Ms. Ortiz as "Owner." The Trust Deed was recorded in the real property records of Calhoun County, Texas, on July 30, 1996. The original holder of the Trust Deed was Statewide Mortgage Company. Statewide Mortgage Company assigned and transferred the Note and Trust Deed to Green Country Bank; the assignment was recorded on August 27, 1996. On October 27, 1999, the successor to Green Country Bank assigned the Note and Trust Deed to Cadle; the assignment was recorded on December 2, 1999. Thus, Cadle purchased the Note and Trust Deed from an intermediate purchaser more than three years after the Trust Deed was recorded.

Cadle asserts it is an innocent purchaser that acquired rights to the lien without knowledge of the deception perpetrated by the Ortizes.[13] Cadle also asserts that it is entitled to rely on the accuracy of real property records. According to Cadle, because its actions in purchasing the loan were induced by Ms. Ortiz's false representation that she was the sole owner of the property, the Ortizes are estopped from challenging the validity of the lien.

---

riage to Mr. Ortiz, it was community property, not separate property. *See* Tex. Fam.Code Ann. § 3.002 (Vernon 2006) ("Community property consists of the property, other than separate property, acquired by either spouse during marriage."); § 3.003(a) ("Property possessed by either spouse during or on dissolution of marriage is presumed to be community property."); *Panozzo v. Panozzo*, 904 S.W.2d 780, 786 (Tex. App.–Corpus Christi 1995, pet. denied) ("with a few exceptions, all property acquired during a marriage is presumed to be community property."); *Duncan v. United States*, 247 F.2d 845, 849 (5th Cir. 1957) (noting that "[t]he presumption that property purchased during the marriage is community property is very cogent, and can

only be repelled by clear and conclusive proof that it was with the individual money or property of one of the partners.").

12. At the bench trial, twenty "agreed exhibits" were admitted into evidence. The exhibits are included in the record.

13. At the bench trial, the only two witnesses were Ms. Ortiz and Mr. Ortiz. Although Cadle attempted to present one witness, counsel for the Ortizes objected, and the witness did not testify. Accordingly, Cadle must rely solely on the Ortizes' testimony and the documents in the record to support its claim of estoppel.

The record contains an "Assignment of Contract for Labor and Materials and Trust Deed," which states that the successor to Green Country Bank transferred its interest in the Trust Deed to Cadle, "an Ohio Corporation located at 100 North Center Street, Newton Falls, Ohio" "for value received," effective September 30, 1999. The record contains no other evidence regarding the circumstances by which Cadle purchased the Trust Deed.

The Texas Supreme Court has set out three categories in which a homestead claimant would be estopped from claiming his homestead:

> (1) when the owners, not actually occupying the property, or so using it that its status is dubious at the time the mortgage is executed, represent that it is not their homestead; (2) when the owners create a lien by entering into a simulated transaction which has all the outward appearance of a valid, unconditional sale, but which is in fact a mortgage; (3) when the owners represent that existing notes are valid mechanic's lien notes for improvements, secured by a mechanic's lien contract properly executed.[14]

In *Brown v. Bank of Galveston, Nat'l Ass'n*, 963 S.W.2d 511, 515 (Tex.1998), the Texas Supreme Court also held that, "[w]hen an innocent third party relies upon the validity of a lien that includes the parties' recitations that no labor or materials were furnished before the execution of the contract, those parties are estopped from later contesting the validity of the lien as a defense to foreclosure."[15] Here, Cadle was an innocent third party that relied on the validity of a lien that included Ms. Ortiz's recitation that she was the sole owner of the property.

I conclude there is sufficient evidence that Ms. Ortiz's false misrepresentations that she was unmarried and the sole owner of the property induced Cadle to purchase the Trust Deed from a subsequent purchaser three years after the Trust Deed was recorded in the property records of Calhoun County. Accordingly, I would hold that Ms. Ortiz is estopped from challenging the validity of the lien.

The majority concludes that "[r]egardless of Cadle's ability to defeat Ms. Ortiz's homestead exemption, it has shown nothing to defeat Mr. Ortiz's homestead exemption." I disagree. Because estoppel may arise from conduct or a failure to act,[16] I conclude that Mr. Ortiz is also estopped from challenging the validity of the lien. At trial, Mr. Ortiz testified that he learned Ms. Ortiz had purchased the property solely in her name "[a]fter she had done it." He also testified that he knew (from Mr. Bostick) that he was supposed to sign the Trust Deed, but he did not do so. I conclude that because Mr. Ortiz admitted that he failed to act when he knew he was required to, he is also estopped from challenging the validity of the lien.

I would reverse the trial court's judgment and render judgment in favor of Cadle. I would also reverse the trial court's judgment awarding attorneys' fees to the Ortizes.

---

**14.** *In re Niland*, 825 F.2d 801, 809 (5th Cir. 1987) (quoting *Lincoln v. Bennett*, 138 Tex. 56, 59, 156 S.W.2d 504, 505 (Tex.1941)).

**15.** *Brown v. Bank of Galveston, Nat'l Ass'n*, 963 S.W.2d 511, 515 (Tex.1998).

**16.** *McKinzie*, 869 S.W.2d at 595.