

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00157-CV

———————————————

REBECCA AYALA, Appellant

V.

ZAK CAPITAL, LLC, Appellee

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-351438-24

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

In two issues in this trespass-to-try-title case involving a homestead claim among cotenants,[1] Appellant Rebecca Ayala complains about the trial court's order denying her motion for partial summary judgment and granting Appellee Zak Capital, LLC's no-evidence motion for summary judgment, giving possession of the subject property to Zak, who claimed it was a bona fide purchaser of the property. We will affirm.

## II. BACKGROUND

### A. Factual Background

Ayala married Roberto Chavez[2] sometime in 2000 or 2001.[3] According to Ayala, she remained married to Roberto until his death on November 24, 2022.

After Roberto's mother died, Roberto and his brother—Steven Chavez— inherited a house and property located at 3613 Knox Street in Fort Worth, Texas (the Property). The Special Warranty Deed conveying the Property from the independent

---

[1]"A cotenancy is formed when two or more persons share the unity of exclusive use and possession in property held in common." *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991).

[2]We will refer to Chavez by his first name because this case also involves his brother with whom he shares the same surname.

[3]Ayala's pleadings contended that the marriage occurred on December 13, 2001; her declaration and affidavit both stated that the marriage was on August 3, 2000; the marriage license reflected that the marriage was on August 3, 2001.

executor of the mother's estate to Roberto and Steven was executed on April 13, 2011.

Ayala contends that "[i]n early 2011," she and Roberto "moved to, and began to live" on the Property. According to Ayala, she lived on the Property with Roberto for six years and did not pay any rent but "occupied it as our homestead." Roberto moved out of the Property in 2017, but Ayala remained. In July 2021, Roberto conveyed his interest in the Property to Steven by special warranty deed.

In October 2023, HEB Homes, LLC entered into a contract to purchase the Property from Steven and then contacted Zak about assigning its right to purchase the Property to Zak. According to Zak, Steven was not involved in Zak's agreement to purchase the Property, and Zak only dealt with HEB Homes and the title company before it entered into an "Agreement to Assign Purchase and Sale Agreement" with HEB Homes. According to Zak, "HEB Homes informed us that the owner disclosed that a holdover tenant was still occupying the home [on the Property]." However, Zak "had no communication with the tenant or the seller during purchase negotiations," and "[t]here was no mention or disclosure of any homestead claim during the transaction." Zak ultimately acquired the Property by warranty deed from Steven in October 2023.

## B. Procedural Background

In November 2023, Zak filed a forcible-detainer action against Ayala in the justice-of-the-peace court and later obtained a judgment for eviction. Ayala appealed

3

that decision to the county court at law, which also granted a judgment for Zak for possession of the Property.

In 2024, Ayala sued Zak in district court, claiming that, as the surviving spouse of Roberto, she was "vested with the surviving spouse's homestead life estate, burdening the Subject Property" pursuant to Texas Constitution Article XVI, Section 52. She alleged causes of action for trespass to try title and quiet title. A temporary restraining order and later a temporary injunction were entered that prevented Zak from evicting Ayala from the Property.[4]

Zak answered, asserting a general denial, the affirmative defense of bona fide purchaser for value, and a claim for reimbursement of property taxes it had paid and attorney's fees. Thereafter, Ayala moved for partial summary judgment[5] on her trespass-to-try-title claim, and Zak moved for no-evidence summary judgment on both trespass to try title and quiet title. Both sides responded to the motions for summary judgment, and the trial court ultimately entered a final order denying Ayala's motion for partial summary judgment and granting Zak's no-evidence motion for summary judgment. The trial court ordered that Ayala take-nothing from Zak and that Zak recover immediate possession of the Property. This appeal followed.

---

[4]Zak later filed a "Motion to Vacate or Set Aside Temporary Injunction" due to lack of proper notice and opportunity to appear, but the record does not contain the ruling on the motion.

[5]In her motion, Ayala stated that she "d[id] not address and d[id] not ask [the] Court to make any ruling on [Zak's] affirmative defense of bona fide purchaser."

4

## III. DISCUSSION

In two issues, Ayala asks, (1) does evidence of her actual possession of land "under constitutional homestead law" constitute evidence of title in a trespass-to-try-title suit or a quiet-title suit,[6] and (2) does a no-evidence motion for summary judgment that incorrectly identifies elements of a claim qualify as a no-evidence motion for summary judgment under Texas Rule of Civil Procedure 166a(i)?

### A. Standard of Review

A party is entitled to summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). "We review summary judgments de novo . . . ." *Weekley Homes, LLC v. Paniagua*, 691 S.W.3d 911, 915 (Tex. 2024); *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). As for a no-evidence summary judgment motion, "a properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element

---

[6]Specifically, her first issue states: "A person can establish title to land under constitutional homestead law by actual possession. Is evidence of such possession therefore evidence of title in a trespass to try title suit or a quiet title suit?"

5

contested in the motion." *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023).

Generally, a plaintiff moving for a traditional summary judgment on its own claim is under no obligation to negate a defendant's pleaded affirmative defenses. *Imperial Charters, LLC v. Redwood Fire & Cas. Ins. Co.*, No. 02-24-00237-CV, 2025 WL 1006279, at *3 (Tex. App.—Fort Worth Apr. 3, 2025, pet. denied) (mem. op.). "If the party opposing a summary judgment relies on an affirmative defense, [it] must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment." *Id.* (quoting *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)).

When reviewing either a traditional or no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

On cross-motions for summary judgment, each party bears the burden of proving its entitlement to judgment as a matter of law. *Devon Energy Prod. Co., L.P. v. Sheppard*, 668 S.W.3d 332, 342–43 (Tex. 2023). "When both parties move for summary judgment on an issue and the trial court grants one motion and denies the

6

other, we review all the summary-judgment evidence and render judgment that the trial court should have rendered." *Point Energy Partners Permian, LLC v. MRC Permian Co.*, 669 S.W.3d 796, 804 (Tex. 2023); *see Visa Inc. v. Sally Beauty Holdings, Inc.*, 651 S.W.3d 278, 315 (Tex. App.—Fort Worth 2021, pet. denied) ("[W]hen the issues raised in the appellant's motion for partial summary judgment overlap with the issues raised in the appellee's motion for final summary judgment, we may review the overlapping issues and render judgment for the appellant as to those matters raised in common.").

**B. Applicable Law**

Under the Texas Property Code, a trespass-to-try-title suit[7] is used to determine title to lands, tenements, or other real property. *Cadle Co. v. Ortiz*, 227 S.W.3d 831, 837 (Tex. App.—Corpus Christi–Edinburg 2007, pet. denied) (citing Tex. Prop. Code Ann. § 22.001); *see Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 769 (Tex. 1994) (stating that a trespass-to-try-title suit is a procedure by which claims to title or the right of possession may be adjudicated). To recover in a trespass-to-try-title action, the plaintiff must prevail on the strength of his own title and not on the weakness of his adversary's title. *Bacon v. Jordan*, 763 S.W.2d 395, 396 (Tex. 1988). "In a trespass-to-try-title action, a plaintiff may prove legal title by establishing: (1) a regular chain of title conveyances from the sovereign to the plaintiff; (2) a superior title to that of the

---

[7]We will address only the trespass-to-try-title claim, as Ayala has acknowledged that she sought summary judgment only on this claim.

defendant out of a common source; (3) title by limitations (i.e., adverse possession); or (4) possession that has not been abandoned." *Brumley v. McDuff*, 616 S.W.3d 826, 832 (Tex. 2021).

The homestead interest is a legal interest created by the Texas Constitution. *Grant v. Clouser*, 287 S.W.3d 914, 919 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The designation of real property as a homestead has many benefits, most notably the protection of the property from seizure and sale for the payment of most debts. *LendingHome Funding Corp. v. Tuesday Real Est., LLC*, No. 05-20-00071-CV, 2021 WL 6124319, at *4 (Tex. App.—Dallas Dec. 28, 2021, no pet.) (mem. op.) (citing Tex. Const. art. XVI § 50(a)). The Texas Family Code provides that neither spouse may sell, convey, or encumber the homestead without the joinder of the other spouse "except as provided in this chapter or by other rules of law." Tex. Fam. Code Ann. § 5.001.

A homestead right in real property cannot rise any higher than the right, title, or interest acquired by the homestead claimant. *Sayers v. Pyland*, 161 S.W.2d 769, 773 (Tex. 1942). The homestead will not operate to circumvent an inherent characteristic and limitation of the right, title, or interest in the property. *Id.* Moreover, homestead rights may not be construed so as to avoid or destroy pre-existing rights. *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 634 (Tex. 1987). And an encumbrance existing against property cannot be affected by the subsequent impression of the homestead exception on the land. *Id.*

8

A bona fide purchaser is one who acquires property in good faith; for value; and without notice, constructive or actual, of any third-party claim or interest. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). Status as a bona fide purchaser is an affirmative defense to a title dispute, and a party with such status is not subject to certain claims or defenses. *Id.* One purchasing land may be charged with constructive notice of an occupant's claims. *Id.* However, possession alone does not give rise to constructive notice. *Id.* at 605.

## C. Application of Law to Facts

### 1. Issue Two - Whether Zak's Motion Is Procedurally Defective

We begin with Ayala's second issue stating that Zak's motion is procedurally defective. In her second issue, Ayala contends that Zak's motion incorrectly identified elements of Zak's claim, and therefore, it did not "qualify" as a no-evidence motion for summary judgment. We disagree.

In its no-evidence motion, Zak sought summary judgment on Ayala's trespass-to-try-title claim, stating:

> There is no evidence of one or more of the following elements of Trespass to Try Title, on which [Ayala] has the burden of proof at trial:
> i. [Ayala] cannot prove she is in the regular chain of title of conveyances from the sovereign to the plaintiff. She has admitted in pleadings and affidavits before the Court that she has no title claim to the Property.
> ii. [Ayala] cannot prove she has a superior title to that of the defendant out of a common source. She has admitted in pleadings and affidavits before the Court that she has no title claim to the Property.
> iii. [Ayala] cannot prove she has title by limitations nor has she alleged such in pleadings or affidavits before the Court.

9

iv. [Ayala] cannot prove she has prior possession with proof of no property abandonment to prove title to the property. She has admitted in pleadings and affidavits before the Court that she has no title claim to the Property.

In her response to the no-evidence motion for summary judgment, Ayala contended that Zak's motion was conclusory and failed to challenge specific elements of her cause of action. On appeal, Ayala complains that Zak's motion "conflates the four distinct varieties of trespass to try title and does not identify, much less challenge, the evidentiary support of any of the actual elements of trespass to try title claim under a common source of title theory." Zak responds that its motion sets out each of the elements of Ayala's causes of action as required by Texas Rule of Civil Procedure 166a(i).

Rule 166a(i) states that in a no-evidence motion, "a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). The motion must state the elements as to which there is no evidence. *Id.*

The Texas Supreme Court has called for strict enforcement of this requirement. *See Timpte Indus., Inc.*, 286 S.W.3d at 310–11 (holding that a no-evidence motion must specifically identify the challenged elements to satisfy Rule 166a(i)). "Thus, a no-evidence motion that lists each element of the plaintiff's claim and then asserts that the plaintiff has no evidence to support 'one or more' or 'any of' those

elements is insufficient to support summary judgment because this language does not clearly identify which elements, whether some or all, are challenged." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 695–96 (Tex. 2017).

Here, as in *Cmty. Health Sys. Prof'l Servs. Corp.*, Zak's no-evidence motion for summary judgment uses the words "one or more." However, the supreme court recently clarified that a motion using these words is not in itself fatal. *See State v. Three Thousand, Seven Hundred Seventy-Four Dollars and Twenty-Eight Cents U.S. Currency*, 713 S.W.3d 381, 388 (Tex. 2025) ("That a motion includes the words 'one or more,' 'any,' and 'each' is not in itself fatal; rather, the problem arises when that language is *all* that a movant includes."). Rather, "[a] no-evidence motion provides adequate notice when the motion describes the challenged elements in sufficient detail to identify them." *Id.*

In its no-evidence motion for summary judgment attacking the trespass-to-try-title claim, Zak stated that there was no evidence that Ayala was "in the regular chain of title of conveyances from the sovereign to the plaintiff"; that Ayala "has a superior title to that of the defendant out of a common source"; that Ayala "has title by limitations"; and that Ayala "has prior possession with proof of no property abandonment to prove title to the property." This is sufficiently specific to identify the challenged elements of the trespass-to-try-title claim. *See Doherty v. Old Place, Inc.*, 316 S.W.3d 840, 844 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (op. on reh'g) (holding that a no-evidence motion that "asserted there is no evidence of any of the following"—"(1) a regular chain of conveyances from the sovereign; (2) a superior

11

title out of a common source; (3) title by adverse possession; or (4) prior possession which has not been abandoned"—was "sufficiently specific in that it clearly identified the methods by which a plaintiff can prove title to land").

Moreover, Ayala's response to the no-evidence motion for summary judgment demonstrated that she had notice of the challenged elements of her cause of action. *See Three Thousand, Seven Hundred Seventy-Four Dollars and Twenty-Eight Cents U.S. Currency*, 713 S.W.3d at 388 (noting that the State demonstrated that it had notice of the challenged elements by its response discussing the evidence). In her response and in her appellate brief, Ayala recognized that the "common source of title theory" was the disputed element of her trespass-to-try-title claim and that both she and Zak were claiming through Roberto. She also attached summary judgment evidence relying upon the "common source of title theory" in support of her response, thereby further demonstrating that she had notice of the challenged elements of the claim. *See id.* Accordingly, we overrule Ayala's second issue.

**2. Issue One - Ayala's Assertion of Homestead Rights and Zak's Defense of Bona Fide Purchaser**

With regard to her first issue and whether her "possession of land" under a homestead claim constituted evidence of title, Ayala asserted that she claimed title through Roberto, who acquired title by special warranty deed from his mother's

12

estate.[8]  While acknowledging that Roberto only had an undivided one-half interest in the Property prior to the transfer of his interest to his brother, Ayala insists that "[t]he moment the homestead estate was established, [she] was vested with an interest in land."  Zak responds that the "fundamental flaw in Ayala's claim is she is essentially asking this [c]ourt to hold that an individual who is a joint heir to real property can establish a homestead right against his/her fellow heirs simply by taking possession of said real property and living in it."  To resolve this issue, we first look to principles governing rights of cotenants.

"A cotenancy is formed when two or more persons share the unity of exclusive use and possession in property held in common."  *Laster*, 826 S.W.2d at 129; *see Wagenschein v. Ehlinger*, 581 S.W.3d 851, 857 (Tex. App.—Corpus Christi–Edinburg 2019, pet. denied) ("Texas recognizes two types of co-tenancies which may be deeded: a tenancy in common and a joint tenancy.").  Here, before Roberto deeded all of his interest to Steven, it is undisputed that Roberto and Steven each owned an undivided one-half interest in the Property and were cotenants.

Each cotenant has the right to enter upon, enjoy, and possess the common estate.  *Arriola v. Kutscherousky*, No. 07-15-00004-CV, 2015 WL 5244417, at *5 (Tex.

---

[8]In her motion for partial summary judgment, Ayala stated that Roberto had a "one-half (1/2) interest in the Property as his sole and separate property."  Although Ayala acknowledged that the Property was the separate property of Roberto, a person is permitted to hold homestead rights in his or her spouse's separate property. *Denmon v. Atlas Leasing, L.L.C.*, 285 S.W.3d 591, 595 (Tex. App.—Dallas 2009, no pet.); *see* Tex. Fam. Code Ann. § 5.001.

App.—Amarillo Sept. 4, 2015, pet. denied) (mem. op.). A homestead interest may be established on an undivided interest in land, *Travelers Ins. Co. v. Nauert*, 200 S.W.2d 661, 664 (Tex. App.—El Paso 1941, no writ), "provided the rights of co-tenants are not prejudiced." *Atkins v. Schmid*, 129 S.W.2d 412, 414 (Tex. App.—Dallas 1939, no writ); *see Grant*, 287 S.W.3d at 920 ("Homestead rights can attach to property interests held by tenancy in common; however, such homestead rights may not prejudice the rights of a cotenant."); *see also Clements v. Lacy*, 51 Tex. 150, 162 (1879) ("[W]e are of [the] opinion that the homestead right, in a proper case, would attach to property held by tenancy in common, but not to prejudice just rights of a co-tenant."). Moreover, the general rule is that homestead rights attaching to a cotenant's interest are subordinate to another cotenant's right to partition. *Grant*, 287 S.W.3d at 920.

Here, any interest Ayala may have had cannot be superior to or prejudice those of Steven, who also had an undivided interest in the Property at the time Ayala claims to have established her homestead interest. *See Sayers*, 161 S.W.2d at 773 (holding that "while one tenant in common may acquire homestead rights in the common property, the rights so acquired are not superior to the rights or remedies of the other joint owners" and those rights may not "prejudice or in anywise interfere with the rights of the other tenants in common"); *see also Smith v. Deschaumes*, 37 Tex. 429, 430 (1872) ("Smith, though a tenant in common with Young, could, by consent of his co-tenant, acquire a homestead on the common property against all the world except his co-tenant."); *Arriola*, 2015 WL 5244417, at *5 (holding that one cotenant cannot bind

14

another cotenant to any act relating to common property simply because they are cotenants). Moreover, there was no summary judgment evidence that Steven either knew of Ayala's homestead claim or consented to it.

Rather, Ayala's summary judgment evidence was limited to her assertion that she lived on the Property, paid property taxes, and considered the Property her homestead. In her response to Zak's no-evidence motion for summary judgment, Ayala attached her declaration, as well as certified copies of her marriage certificate, Roberto's death certificate, three deeds (a special warranty deed from the independent executor to Roberto and Steven, a special warranty deed from Roberto to Steven, and a warranty deed from Steven to Zak), and Zak's motion to set aside the temporary injunction.

In her declaration, Ayala attested that "[i]n early 2011," she and Roberto "moved to, and began to live on the Property." She added that "[w]e maintained the Property, paid the property taxes, and raised our granddaughter in the home located on the Property." Ayala further stated that Roberto stopped living on the Property in 2017, but their granddaughter continued to live on the Property with her until 2022. And according to Ayala, she "ha[s] not lived anywhere except the Property since moving in in 2011."

There is no summary judgment evidence that Ayala had Steven's consent to acquire a homestead interest on property held in common with him or that either Steven or Zak had knowledge of any homestead claim by Ayala so as to give

15

constructive notice of the claim. *See Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex. 1963) ("Any cotenant has a right to be in the possession of property in which he owns an interest, hence if the acts of the respondents and their predecessors in title are susceptible of explanation consistent with the existence of the common title then such acts cannot be such as to give constructive notice to the cotenants out of possession."); *see also BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 71 (Tex. 2011) ("A cotenant's use of the common property is presumed non-adverse unless the cotenant repudiates the title of its cotenant."). On the contrary, the summary judgment evidence reflected that Steven obtained a judgment of eviction against Ayala in July 2022.

In addition, Ayala's payment of taxes was no notice to Steven or Zak of her claim. *See Todd*, 365 S.W.2d at 160 (holding that possession coupled with payments of taxes is not notice to a cotenant of a repudiation of common title). While Ayala may have been able to successfully invoke the homestead exemption as to her creditors, she could not invoke it as to her cotenant, who later transferred all of the Property to Zak. *See Cleveland v. Milner*, 170 S.W.2d 472, 475 (Tex. [Comm'n Op.] 1943) ("Undoubtedly Cleveland and his wife could have invoked successfully the homestead exemption, had this been a suit by their creditor to subject the property to payment of debt."); *see also Heafner v. Heafner*, No. 01-02-00429-CV, 2003 WL 22311282, at *9 (Tex. App.—Houston [1st Dist.] Oct. 9, 2003, no pet.) (mem. op.) (holding that when one cotenant asserts a homestead claim on his undivided interest in real property, "his

16

homestead rights are subordinate to all the rights and remedies another co-tenant would have in the absence of the homestead claim").

Even if Ayala could have established her homestead rights as to Steven, her homestead claim did not survive Zak's claim of bona fide purchaser. In response to Ayala's motion for summary judgment, Zak attached evidence supporting its affirmative defense of bona fide purchaser, including the affidavit of Narron Clark, Zak's Acquisition Manager. Clark stated:

> On or around October 5, 2023, I received a phone call from Sarah, a sales representative with HEB Homes, LLC, presenting this property for sale. It's important to note that Steven Chavez has no connection to [Zak] and was not involved in the agreement to purchase this property. This was an arms-length transaction, with our sole points of contact being HEB Homes, LLC (also known as New Western) and the title company.

> During the process, I was informed by HEB Homes that the property was tenant-occupied, lease was expired, and an eviction would be required after closing. HEB Homes had the property under contract and they would assign their right to purchase to us. HEB Homes informed us that the owner disclosed that a holdover tenant was still occupying the home. . . .

> After purchase, we hired GLS to handle the eviction, with Tia M. Elliott-Santos acting as our Eviction Accounts Case Manager. During the discovery process, it was revealed that the current tenant had previously been evicted by Mr. Chavez before the death of her husband. A copy of this information is attached as Exhibit 6.[9] This information was uncovered by Tia with GLS, as I had no prior knowledge of the tenant's eviction history or background. GLS also discovered all of the

---

[9]The "Register of Actions" from the justice-of-the-peace court indicated that, on July 18, 2022, Steven obtained a default judgment in his eviction action against Ayala.

17

deeds in the chain of title attached as Exhibits 2,[ ]3, and 4. We had no communications with the tenant or the seller during purchase negotiations. HEB Homes and the title company served as our only points of contact. A thorough title search was conducted by Texas Excel Title, and a title policy was issued at the time of closing. There was no mention or disclosure of any homestead claim during the transaction, and we were unaware of any such claim. The only information provided to us was that the property had a tenant with an expired lease and that eviction would be necessary post-sale.

Ayala offered no evidence or objections to refute Clark's affidavit and did not reply to Zak's affirmative defense of bona fide purchase. Even though Ayala stated that she occupied the Property, her possession alone was not unequivocal and did not give rise to constructive notice of her homestead claim. *See Strong v. Strong*, 98 S.W.2d 346, 351 (Tex. [Comm'n Op.] 1936) ("A fact or circumstance, other than facts of record or possession visible and exclusive, will not put a purchaser on inquiry unless it is a fact or circumstance that he knows or should know."); *see also Madison*, 39 S.W.3d at 607 (holding that possession as tenant "was neither exclusive nor unequivocal" and did not impute notice of his claims and was compatible with another's ownership assertion). Therefore, even if Ayala was able to establish a homestead interest in the Property as to Steven, she failed to rebut Zak's affirmative defense of bona fide purchaser. *See Martin v. Granger*, 204 S.W. 666, 667 (Tex. App.—Texarkana 1918, writ ref'd) (holding that although homestead rights attached, "that constitutional immunity will not be enforced against an innocent holder for value of the debt and lien thus created").

We overrule Ayala's first issue.

18

## IV. CONCLUSION

Having overruled both of Ayala's issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  August 21, 2025