ACCEPTED
05-14-00891-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
3/9/2015 2:12:06 PM
LISA MATZ
CLERK

## NO. 05-14-00891-CV

## IN THE COURT OF APPEALS
## FOR THE FIFTH COURT OF APPEALS
## AT DALLAS, TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
3/9/2015 2:12:06 PM
LISA MATZ
Clerk

_____

## FIRST BANK & TRUST CO., a/k/a THE BANK OF WEATHERFORD, and DAVID GARVIN,

*Appellants*

## v.

## CENTURA LAND CORPORATION, f/k/a IORI CENTURA, INC.,

*Appellee.*

_____

Appeal from the 44th District Court, Dallas County, Texas
No. DC-12-04743, The Honorable Carlos Cortez, Presiding

_____

## AMENDED BRIEF OF APPELLEE

## ORAL ARGUMENT REQUESTED

_____

Jonathan J. Cunningham
State Bar No. 00793574
C. Gregory Shamoun
State Bar No. 18089650

**SHAMOUN & NORMAN, LLP**
1755 Wittington Place, Suite 200, LB 25
Dallas, Texas 75234
Telephone: (214) 987-1745
Facsimile:  (214) 521-9033
**Attorneys for Appellee**

i

Identity of Parties and Counsel

**Appellants**

First Bank & Trust Co. a/k/a The Bank of Weatherford
David Garvin

**Counsel for Appellants**

Gary M. Bellair, Esq.
CRAIG, TERRILL, HALE & GRANTHAM, LLP
9816 Slide Road, Suite 201
Lubbock, Texas 79424
(806) 744-3232
garyb@cthglawfirm.com

Paul B. Lackey, Esq.
pbl@lhlaw.net
Deborah Deitsch-Perez, Esq.
ddp@lhlaw.net
Kristen A. Miller Reinsch
kam@lhlaw.net
LACKEY HERSHMAN, LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201
(214) 560-2203 fax

**Appellees**

Centura Land Corporation, f/k/a IORI Centura, Inc.

**Counsel Appellee**

C. Gregory Shamoun
Jonathan Cunningham
SHAMOUN & NORMAN, LLP
1755 Wittington Place
Suite 200, LB 25
Dallas, Texas 75234
g@snlegal.com
jjc@snlegal.com

ii

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Texas Rule of Appellate Procedure 39.1, Appellee Centura Land Corporation respectfully requests oral argument in this matter.

# TABLE OF CONTENTS

Identity of Parties and Counsel ............................................................................ ii

Request for Oral Argument ……………………………………………………….iii

Index of Authorities ........................................................................................1

Statement of the Case..........................................................................................5

Statement of Facts ..........................................................................................7

Summary of the Argument................................................................................11

Argument and Authorities..................................................................................12

     I.     Standard of Review....................................................................12

     II.    The Final Judgment Correctly Declared the Foreclosure Sale Void.......13

     III.    The Issue of Denying Appellants Leave to Amend …………………33

     III.    The "Tender" Issue .................................................................35

     III.    The Attorney's Fee Award Issue .............................................39

     III.    Appellants' Motion for Contempt.............................................41

Conclusion and Prayer ...................................................................................55

Certificate of Service ....................................................................................56

Certificate of Compliance with TRAP 9.4(i)(3) .....................................................56

# INDEX OF AUTHORITIES

*Amalgamated Transit Union, Local Div. 1338 v. Dallas Pub. Transit Bd.*, 430 S.W.2d 107 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.) ............................45

*Bagwell v. Ridge at Alta Vista Invs. I, LLC*, 440 S.W.3d 287 (Tex.App.—Dallas 2014, pet. filed) ..............................................................................................35

*Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1 (Tex. 1999).....................12

*Bank of East Texas v. Jones,* 758 S.W.2d 293 (Tex.App.—Tyler 1988, no writ) (per curiam)...................................................................................... 51,52

*Beasley v. Burns,* 7 S.W.3d 768 (Tex.App.—Texarkana 1999, pet. denied) 22,28,32

*Biddle v. Nat'l Old Line Ins. Co.*, 513 S.W.2d 135 (Tex. Civ. App.—Dallas 1974, writ ref'd n.r.e.) ...............................................................................................13

*Bonilla v. Roberson*, 918 S.W.2d 17 (Tex. App.—Corpus Christi 1996, no writ)..26

*Bonilla v. State,* 933 S.W.2d 538 (Tex. App.—Houston [1st Dist.] 1995, no writ)30

*Burkhardt v. Lieberman*, 138 Tex. 409, 159 S.W.2d 847 (Tex. 1942).............. 36,37

*C&H Nationwide, Inc. v. Norwest Bank of Tex. N.A.*, 208 F.3d 490 (5th Cir. 2000)...............................................................................................53

*Cadle Co. v. Ortiz*, 227 S.W.3d 831 (Tex. App.—Corpus Christi 2007, pet. denied)................................................ 23,39

*Carr v. Brasher*, 776 S.W.2d 467 (Tex. 1989) ......................................................12

*Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368 (Tex. App.—Houston [14th Dist.] 1989, writ denied)..............................................................................13

*Cherry v. North Am. Lloyds of Tex.,* 770 S.W.2d 4 (Tex.App.—Houston [1st Dist.] 1989, writ denied) .................................................................................. 22,28,32

*Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623 (Tex. 1996)..............................12

*Cooper v. Cooper,* 21 S.W.2d 70 (Tex.Civ.App.—Dallas 1929, no writ) .............43

*Diversified, Inc. v. Walker*, 702 S.W.2d 717 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) ..................................................................................27

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237 (Tex. 2001).........................................12

*Durkay v. Madco Oil Co.,* 862 S.W.2d 14 (Tex.App.—Corpus Christi 1993, writ denied)..................................................................................26

*Flores v. Haberman*, 915 S.W.2d 477 (Tex. 1995) (orig. proceeding) ...................50

*G4 Trust v. Consolidated Gasoline, Inc.*, No. 02-10-00404-CV, 2011 Tex.App. LEXIS 7158 (Tex. App.—Fort Worth Aug. 31, 2011, pet. denied) .............. 26,27

*Griffin v. Superior Insurance Co.*, 161 Tex. 195, 338 S.W.2d 415 (Tex. 1960).....30

*Gunn v. Fuqua,* 397 S.W.3d 358 (Tex.App.—Dallas 2013, pet. denied)................35

*GWX Corp. v. Sw. Sav. Ass'n*, No. 01-88-00571-CV, 1989 Tex. App. LEXIS 952 (Tex. App.—Houston [1st Dist.] Apr. 20, 1989, writ denied)................................13

*Green v. Ransor, Inc.,* 175 S.W.3d 513 (Tex.App.—Fort Worth 2005, no pet.) .............................................................................................. 24,25

*Halter v. Allied Merchants Bank*, 751 S.W.2d 286 (Tex. App.—Beaumont 1988, writ denied) .................................................................................13

*Holly Park Condo. Homeowners' Assoc., Inc. v. Lowery,* 310 S.W.3d 144 (Tex.App.—Dallas 2010, pet. denied)....................................................40

*Houston First Am. Sav. v. Musick*, 650 S.W.2d 764 (Tex. 1983)................. 15,16,17

*In re A.E.A.*, 406 S.W.3d 404 (Tex. App.—Fort Worth 2013, no pet.)...................31

*In re Crow-Billingsley Air Park,* 98 S.W.3d 178 (Tex. 2003, orig. proceeding) (per curiam) ................................................................................ 42,45

*In re Cunningham*, 2008 Bankr. LEXIS 1290, at *18 (N.D. Tex. Bankr. May 1, 2008)...................................................................................23

*In re Dutch Inn of Orlando, Ltd.*, 614 F.2d 504 (5th Cir. 1980) ...........................50

*In re Estate of Henry,* 250 S.W.3d 518 (Tex.App.—Dallas 2008, no pet.) ...........35

*In re Jamail*, 156 S.W.3d 104 (Tex. App.—Austin 2004, orig. proceeding)..........50

*In re Marriage of Richards,* 991 S.W.2d 30 (Tex.App.—Amarillo 1998, no pet.)............................................................................................ 43,44

*In re Romero, Gonzalez & Benavides, L.L.P.*, 293 S.W.3d 662 (Tex. App.—San Antonio 2009, orig. proceeding) ....................................................42

*Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672 (Tex. 1987) .............21

*Jones v. Hyman*, 107 S.W.3d 830 (Tex. App.—Dallas 2003, no pet.)....................12

*Jordan v. Hagler*, 179 S.W.3d 217 (Tex. App.—Fort Worth 2005, no pet.) ..........50

*King v. Hill*, No. 07-10-0198-CV, 2012 Tex. App. LEXIS 2304 (Tex. App.—Amarillo Mar. 22, 2012, no pet.) .................................................................. 13,14

*Li Li v. 1821 W. Main Dev. LLC*, No. 14-10-01227-CV, 2011 Tex. App. LEXIS 9333 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, pet. denied) ........... 15,17

*Loew's Inc. v. Superior Court of Cal.*, 301 P.2d 64 (Cal. App. 1956) ....................51

*Masterson v. Hogue,* 842 S.W.2d 696 (Tex.App.—Tyler 1992, no writ).... 22,28,32

*Merrell v. Fanning & Harper*, 597 S.W.2d 945 (Tex. Civ. App.—Tyler 1980, no writ) ................................................................................................................42

*Michael v. Crawford*, 108 Tex. 352, 193 S.W. 1070 (1917))................................25

*Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618 (Tex. 2007) .............................12

*Modern Aero Sales, Inc. v. Winzen Research, Inc.,* 486 S.W.2d 135 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.)....................................................36

*Montgomery v. Aurora Loan Servs., LLC*, 375 S.W.3d 617 (Tex. App.—Dallas 2012, pet. denied) ..............................................................................................18

*Moss v. Tennant*, 722 S.W.2d 762 (Tex. App.—Houston [14th Dist.] 1986, orig. proceeding)..........................................................................................................50

*Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 252 S.W.3d 605 (Tex. App.—Austin 2008) (emphasis added), *rev'd on other grounds,* 300 S.W.3d 746 (Tex. 2009)........................................................................................................26

*Packard Transport, Inc. v. Dunkerly,* No. 14-09-00652-CV, 2010 Tex.App. LEXIS 4984 (Tex.App.—Houston [14th Dist.] July 1, 2010, no pet.) (mem. op.)..... 24,29

*Renger v. Jeffrey*, 182 S.W.2d 701 (Tex. 1944) ........................................................49

*Roskey v. Cont'l Cas. Co.,* 190 S.W.3d 875 (Tex.App.—Dallas 2006, pet. denied).............................................................................................................35

*Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135 (Tex. App.—Corpus Christi 2008, no pet.)....................................................................................................13

*San Antonio Masonry & Tool Supply, Inc. v. Epstein & Sons Int'l,* 281 S.W.3d 441 (Tex.App.—San Antonio 2005, no pet.)....................................................... 15,19

*Schanzle v. JPMC Specialty Mortg. LLC*, No. 03-09-00639-CV, 2011 Tex. App. LEXIS 1748 (Tex. App.—Austin Mar. 11, 2011, no pet.) (mem. op.) ...............31

*Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940 (Tex. App.—Corpus Christi 1988, writ denied) ...................................................................................27

*Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671 (1942) ..................................25

*State Bank & Trust Co. of Golden Meadow v. Boat,* 926 F.2d 449 (5th Cir. 1991).48

*Street v. Second Court of Appeals,* 756 S.W.2d 299 (Tex. 1988) ...........................42

*Tamplen v. Bryeans*, 640 S.W.2d 421 (Tex. App.—Waco 1982, writ ref'd n.r.e.).27

*Terrill v. Tuckness,* 985 S.W.2d 97 (Tex.App.—San Antonio 1998, no pet.) (op. on rehearing)....................................................................................... 24,30

*Third Nat'l Bank v. Impac, Ltd.,* 432 U.S. 312, 97 S.Ct. 2307 (1977)....................48

*Tieuel v. S. Pac. Transp. Co.,* 654 S.W.2d 771 (Tex.App.—Houston [14[th] Dist.] 1983, no writ) ...........................................................................................18

*UMLIC VP LLC v. T&M Sales & Envtl. Sys.*, 176 S.W.3d 595 (Tex. App.—Corpus Christi 2005, pet. denied) ..............................................................................25

*Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705 (Tex. 1982)............................................................................................. 25,26,27

*U.S. v. F.D.I.C.,* 881 F.2d 207 (5th Cir. 1989) .......................................................48

*U.S. v. Theos,* 709 F.Supp. 1007 (D. Colo. 1989) ..................................................51

*Valence Oper. Co. v. Dorsett*, 164 S.W.3d 656 (Tex. 2005)...................................12

*Valerio v. Laughlin*, 307 S.W.2d 352 (Tex. Civ. App.—San Antonio 1957, no writ) ................................................................................................47

*Wells Fargo Bank, N.A. v. Robinson,* 391 S.W.3d 590 (Tex.App.—Dallas 2012, no pet.) ................................................................................................39

## STATEMENT OF THE CASE

This case does indeed arise from a putative nonjudicial foreclosure sale of real property located in Dallas County.

At all times pertinent to this case, Appellant First Bank had not filed, initiated or asserted a claim against Appellee Centura to recover on the Promissory Note or any claim for a deficiency judgment.

On April 27, 2012, Centura filed its Original Petition against Appellants asserting wrongful foreclosure, seeking declaratory judgment, and breach of contract. [CR 8] Appellants answered by general denial on May 14, 2012. [CR 17] On June 22, 2012, First Bank filed its First Amended Third-Party Petition and Counterclaim, asserting against Centura and third-party individuals claims for tortious interference with contract, abuse of process, slander of title, and declaratory judgment. [CR 20]

On October 10, 2012, Appellants filed their Motion for Partial Summary Judgment against the claims asserted by Centura. [CR 43] After response and

hearing, on December 3, 2012, the Trial Court entered its Order Denying Defendants' Motion for Partial Summary Judgment. [CR 411] On May 23, 2013, Centura (and the individual third-party defendants) filed their Motion for Summary Judgment as to Appellants' counterclaims and third-party claims. [CR 482] After response and hearing, on June 27, 2013, the Trial Court entered its Order Granting Counter-Defendant Centura and Third-Party Defendants' Motion for Summary Judgment. [CR 801]

On August 22, 2013, Centura filed its Motion for Partial Summary Judgment As To Liability for Wrongful Foreclosure. [CR 834] Defendants filed their Response on October 3, 2013. [CR 1057] After initially denying Centura's motion, Centura filed another motion for summary judgment on January 2, 2014 [CR 1507], to which Appellants filed their Response on February 5, 2014. [CR 1692] Ultimately, after hearing, on February 18, 2014, the Trial Court signed its Order Granting In Part Centura Land Corporation's Motion for Summary Judgment, wherein the court held that the foreclosure was void as a matter of law. [CR 1805]

On May 8, 2014, Centura then filed its Motion for Summary Judgment seeking the Trial Court's declaration that $7,000,000 is the amount required to release the lien on the property, pursuant to the Deed of Trust. [CR 1810] After response and hearing, the Trial Court issued on June 5, 2014 its Order Granting

Plaintiff's Motion for Summary Judgment, wherein the court declared that $7,000,000 is the amount required to release the Deed of Trust. [CR 2419]

Although Appellants filed a premature Notice of Appeal on July 7, 2014 [CR 2421], the Trial Court did not issue its Final Judgment in the case until it had heard the issue of award of attorney's fees. Accordingly, the Court's Final Judgment was issued on September 9, 2014. [CR Supp. Vol. I, p. 289] On September 15, 2014, Appellants filed their Amended Notice of Appeal. [CR Supp. Vol. I, p. 292] Finally, in accordance with the Final Judgment, Centura paid $7,000,000.00 into the registry of the court on November 16, 2014. [CR Supp. Vol. II, p. 109-110, 113-117]

## STATEMENT OF FACTS

On or around August 22, 2005, Centura purchased certain real property located in Dallas County, Texas (the "Property"), consisting of approximately 10 acres situated along the west side of the Dallas Parkway (frontage road for the Dallas North Tollway) just south of Spring Valley Road. [CR 64-67] Centura purchased the Property for approximately $13,000,000.00, $7,000,000.00 of which was financed with a loan (the "Loan") from Columbian. *Id.* The Loan was evidenced by a Promissory Note dated August 22, 2007 (the "Note"), executed by Plaintiff and payable to Columbian, in the original principal amount of

$7,000,000.00. *Id.* The Note is secured by the Deed of Trust. [CR 69-79] The Note and Deed of Trust were modified pursuant to a Modification, Renewal and Extension Agreement dated as of September 21, 2009. [CR 113]

On July 11, 2011, a foreclosure notice of sale was posted stating that the Foreclosure would take place at the *south* entrance, which is the wrong location. [CR 23, 26; CR 1248at ¶ 6][1]

On or around August 2, 2011, Defendant David Garvin, purporting to act pursuant to Bank of Weatherford and First Bank's directives, foreclosed the Property at a nonjudicial foreclosure sale (referred to herein as the "Foreclosure"). [CR 508]  In connection with the Foreclosure, Garvin purportedly sold the Property to First Bank as the highest bidder for a bid price of $6,500,000.00 and caused a Substitute Trustee's Deed to be filed and recorded in the Dallas County real property records as Instrument No. 201100212856 (the "Trustee's Deed"). *Id.* The sworn Substitute Trustee's Deed executed by David Garvin, dated August 2, 2011 stated that the place of the sale of the Property was "at the south entrance to

---

[1] A sworn affidavit by Dennis Olson stated that he posted a Notice of Substitute Trustee's Sale on July 11, 2011. [CR 134]  Although the date of execution of the Affidavit was changed to July 12, 2011, the substance and content of the affidavit was not altered or changed.

the Government Center in Dallas, Dallas County, Texas,"[2] which is the wrong location (wrong entrance and wrong building).  [CR 509-11]

On April 27, 2012, Centura filed its Original Petition against Appellants asserting wrongful foreclosure, seeking declaratory judgment, and breach of contract.  [CR 8]  During the litigation, on June 22, 2012, Appellant First Bank filed a First Amended Third-Party Petition and Counterclaim, wherein First Bank expressly pleaded, as a fact, that "The notice of sale designated the south entrance for the foreclosure . . . ."  [CR 23, 26]

As evidence proffered by Appellants in Response to Centura's Motion for Summary Judgment during the litigation, Appellants submitted a sworn Affidavit of Greg Garland, First Bank's president, stating under oath that the Notice of Substitute Trustee's Sale cited "the correct location as the south side of the George Allen courts building."  [CR 1248]  And, under oath Mr. Garland testified in his

---

[2] *After* Centura filed its lawsuit, on May 2, 2012, First Bank secured from David Garvin the execution of a putative Correction Substitute Trustee Deed, purportedly changing the place of the foreclosure sale to the north side of the George Allen Courts Building, as designated by the Commissioners Court.  [CR 561]  The accompanying Affidavit executed by Mr. Garvin on May 2**,** 2012 states that "On or about July 12, **2012**, a Notice of Substitute Trustee's Sale was posted . . . ."  [CR 788] [emphasis added]

Affidavit that "The sale was then conducted on August 2, 2011, at the correct location: the south side of the George Allen courts building."[3]  [CR 1248]

Also, on or about August 15, 2012, during the litigation, and with notice of a *lis pendens* filed by Centura, First Bank sold the property to Parkway Inwood, LP for $6,570,000.00 (loaned to Parkway by First Bank through a promissory note), and Parkway intervened in the lawsuit on January 10, 2013.  [CR 472]  Parkway's Petition in Intervention, pursuant to a Motion by Centura, was subsequently stricken by the Trial Court.  [CR 1450]

Ultimately, on February18, 2014, the Trial Court signed its Order Granting In Part Centura Land Corporation's Motion for Summary Judgment, wherein the court held that the foreclosure was void as a matter of law.  [CR 1805]

On May 8, 2014, Centura then filed its Motion for Summary Judgment seeking the Trial Court's declaration that $7,000,000 was the amount required to release the lien on the property, pursuant to the Deed of Trust.  [CR 1810]  After response and hearing, the Trial Court issued on June 5, 2014 its Order Granting Plaintiff's Motion for Summary Judgment, wherein the court declared that $7,000,000 is the amount required to release the Deed of Trust.  [CR 2419]

---

[3] Subsequently, on February 5, 2014, Greg Garland executed another Affidavit wherein he attempted to disavow his previous sworn testimony in his 2013 Affidavit.  [CR 1741]

Although Appellants filed a premature Notice of Appeal on July 7, 2014 [CR 2421], the Trial Court did not issue its Final Judgment in the case until it had heard the issue of award of attorney's fees. Accordingly, the Court's Final Judgment was issued on September 9, 2014. [CR Supp. Vol. I, p. 289] On September 15, 2014, Appellants filed their Amended Notice of Appeal. [CR Supp. Vol. I, p. 292] Finally, in accordance with the Final Judgment, Centura paid $7,000,000.00 into the registry of the court on November 16, 2014. [CR Supp. Vol. II, p. 109-110, 113-117]

## SUMMARY OF THE ARGUMENT

The Trial Court correctly granted summary judgment declaring the foreclosure sale void *ab initio.*

The Trial Court also correctly granted summary judgment declaring that $7,000,000.00 was the amount required to release the lien on the property, pursuant to the Deed of Trust.

The Trial Court correctly awarded Centura attorney's fees pursuant to the Declaratory Judgment Act.

Because Appellants failed to supersede the execution of the Final Judgment while on appeal, Centura rightfully executed on the judgment by depositing $7,000,000.00 into the registry of the court, in compliance with the Final Judgment, and the Deed of Trust was correctly released. As a result, Appellant

11

First Bank effectively limited its remedy on appeal, since Centura received clear title to property without encumbrance of any lien. Because Centura rightfully executed on the Final Judgment, regardless of the case's status on appeal, Centura is not, and cannot be, liable for contempt.

**ARGUMENT AND AUTHORITIES**

## I. Standard of Review

A traditional motion for summary judgment is reviewed on appeal de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *Valence Oper. Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A traditional summary judgment under Tex. R. Civ. P. 166a(c) is proper when a movant establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The appellate court may review and affirm on any ground the movant presented to the court in its motion for summary judgment, regardless of whether the trial court identified the ground relied on to grant the summary judgment. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). When the summary judgment does not state the grounds on which it is granted, the non-movant must show that each ground alleged in the motion is insufficient to support the judgment. *Jones v. Hyman*, 107 S.W.3d 830, 832 (Tex. App.—Dallas 2003, no pet.). Otherwise, the summary judgment may be affirmed on any one meritorious

12

ground alleged. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Carr v. Brasher*, 776 S.W.2d 467, 569 (Tex. 1989). The appellate court may even review grounds in earlier summary judgment motions, even though they were denied. *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5 (Tex. 1999).

## II.     The Final Judgment Correctly Declared the Foreclosure Sale Void

### A. *The Foreclosure was wrongful because it was conducted at the wrong location.*

In order to support its claim for wrongful foreclosure, Centura established there was a defect in the foreclosure sale proceedings. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied)). The irregularity in the proceedings may be slight. *GWX Corp. v. Sw. Sav. Ass'n*, No. 01-88-00571-CV, 1989 Tex. App. LEXIS 952, at *11 (Tex. App.—Houston [1st Dist.] Apr. 20, 1989, writ denied); *King v. Hill*, No. 07-10-0198-CV, 2012 Tex. App. LEXIS 2304, at *7 (Tex. App.—Amarillo Mar. 22, 2012, no pet.). Failure to adhere to the terms of a deed of trust is frequently a ground for setting aside a foreclosure sale. *GWX Corp.*, 1989 Tex. App. LEXIS 952, at *15 (citing *Biddle v. Nat'l Old Line Ins. Co.*, 513 S.W.2d 135, 138 (Tex. Civ. App.—Dallas 1974, writ ref'd n.r.e.); *Halter v. Allied*

*Merchants Bank*, 751 S.W.2d 286, 288 (Tex. App.—Beaumont 1988, writ denied)).

Section 51.002 of the *Texas Property Code* provides that a foreclosure sale "must take place at the county courthouse in the county in which the land is located. . . . The commissioners court shall designate the area at the courthouse where the sales are to take place and shall record the designation in the real property records of the county." TEX. PROP. CODE § 51.002(a). Likewise, the Deed of Trust requires a trustee's sale to be conducted "at the location within the courthouse designated by the County Commissioners Court, or if no such area has been designated, at the area designated in the notice of sale." [CR 521]

The Property in this case is located in Dallas County. Pursuant to Order No. 2009 0463, the Commissioners Court of Dallas County has designated the area outside on the north side of the George Allen Courts Building facing Commerce Street below the overhang as the location for real property foreclosure sales. [CR 515, Court Order] Pursuant to the *Texas Property Code*, **"[t]he sale must occur in the designated area**." TEX. PROP. CODE § 51.002(a) [emphasis added]. Accordingly, **"[t]he failure to conduct a foreclosure sale at the designated location for such sales is a defect in the foreclosure sale proceedings."** *Hill*, 2012 Tex. App. LEXIS 2304, at *5 (emphasis added).

According to the *sworn* Trustee's Deed, the purported Foreclosure of the

14

Property was conducted at the "south entrance to the Government Center in Dallas, Dallas County, Texas." [CR 509] Thus, as sworn to, the sale did not take place at the area outside on the north side of the George Allen Courts Building facing Commerce Street below the overhang, which is the required location under the Deed of Trust and *Texas Property Code*. Therefore, Appellants failed to adhere to the terms of the Deed of Trust and the *Texas Property Code*, and the Foreclosure was, as a matter of law, wrongful.

### B. The Foreclosure was wrongful because the notice of foreclosure designated the wrong location for the foreclosure sale.

"Although pleadings generally do not constitute summary judgment proof, if a plaintiff's pleadings contain judicial admissions negating a cause of action, summary judgment may properly be granted on the basis of the pleadings." *San Antonio Masonry & Tool Supply, Inc. v. Epstein & Sons Int'l*, 281 S.W.3d 441, 446 (Tex. App.—San Antonio 2005, no pet.). "Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions. Any fact admitted is conclusively established in the case without the introduction of the pleadings or presentation of other evidence." *See Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983); *see also Li Li v. 1821 W. Main Dev. LLC*, No. 14-10-01227-CV, 2011 Tex. App. LEXIS 9333, at *11 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, pet. denied) ("In her counter-claim, she acknowledged that she had a valid oral agreement with both Seven Bricks and

15

West Main. Such an assertion of fact, not pled in the alternative, in the live pleadings of a party is regarded as a formal judicial admission, precluding the party from later disputing the admitted fact. Because Li Li judicially admitted that she had a contract with West Main, she cannot dispute the existence of the contract." (citations omitted)). "The facts alleged or admitted in the live pleadings of a party are accepted as true by the court and jury and are binding on the pleader." *Houston First Am. Sav.*, 650 S.W.2d at 769.

In its First Amended Third-Party Petition and Counterclaim (the "Counterclaim"), First Bank stated:

> Centura has no viable claim for wrongful foreclosure. Centura alleges that the foreclosure sale was not conducted in accordance with TEX. PROP. CODE § 51.002(a) because the sale is to be conducted "at the location within the courthouse designated by the County Commissioners Court, or if no such area has been designated, at the area designated in the notice of sale." However, the sale was conducted at the area designated by the Dallas County Commissioners Court, and in accordance with TEX. PROP. CODE § 51.002(a). ***The notice of sale designated the south entrance for the foreclosure***, but the sale actually took place at the north side of the George Allen Courts Building facing Commerce Street below the overhang pursuant to Order No. 2009 0463 of the Dallas County Commissioners Court. Therefore, because the sale took place in the correct place designated by the Texas Property Code and the Dallas County Commissioners Court, there was no wrongful foreclosure. [CR 23, 26, First Bank's Counterclaim p. 4, ¶ 10; p. 7, ¶ 16]

16

As established earlier, the Commissioner's Court has designated the area outside on the north side of the George Allen Courts Building facing Commerce Street below the overhang as the location for foreclosure sales. [CR 515] Thus, **First Bank judicially admitted, as a matter of law, in its Counterclaim, that the *notice of foreclosure sale* designated the <u>south entrance</u>**. [CR 23, 26, First Bank's Counterclaim p. 4, ¶ 10; p. 7, ¶ 16]   Despite Appellants' position and assertions that even though the foreclosure notice designated the wrong location, that the Foreclosure was not wrongful because the foreclosure actually took place in the proper location, Appellants cannot escape that the statement that the notice of sale designated the south entrance for the foreclosure is an assertion of fact that is not pleaded in the alternative.  Therefore, as a matter of law, it is regarded as a judicial admission, was binding on Appellants, and was required to be accepted as true by the Trial Court. *See Houston First Am. Sav.*, 650 S.W.2d at 767; *Li Li*, 2011 Tex. App. LEXIS 9333, at *11.

Moreover, not only were Appellants precluded from attempting to introduce evidence that contradicts its admission that the notice designated the wrong location, but according to the sworn statement of Dennis Olson, the agent of First Bank and Bank Of Weatherford, the Notice of Substitute Trustee's Sale was filed and posted "near the door of the Dallas County Courthouse" **on July 11, 2011**. [CR 1089-90, Affidavit of Posting and Filing of Notice] Although judicially

17

admitting notice of sale designating the south entrance for the foreclosure, First Bank never produced the Notice of Substitute Trustee's Sale that was filed on July 11, 2011. Furthermore, First Bank contended the notice of sale is a legal document on file with the county clerk's office and thus, as First Bank contended, its contents can be easily ascertained. This is not true. Although foreclosure notices are filed in the office of the county clerk, unlike deeds and other *recorded* documents, the county clerk does not keep foreclosure notices indefinitely.[4] In fact, foreclosure notices are retained by the Dallas County clerk for less than three months.[5] The putative foreclosure at issue took place several years ago. Thus, Appellants were unable to cite to or produce any competent summary judgment evidence that contradicted the facts sworn to by Olson that the notice was filed on July 11, 2011.[6]

---

[4] *See* TEX. PROP. CODE § 51.002(f) ("Each county clerk shall keep all notices filed under Subdivision (2) of Subsection (b) in a convenient file that is available to the public for examination during normal business hours. **The clerk may dispose of the notices after the date of sale specified in the notice has passed**." (emphasis added)); *see also Montgomery v. Aurora Loan Servs., LLC*, 375 S.W.3d 617, 621 (Tex. App.—Dallas 2012, pet. denied) ("The plain language of section 51.002(b)(2) requires a party to file the notice of sale with the county clerk in which the property is located. It does not require the notice of sale to be recorded in the permanent deed records.").

[5] *See* http://www.dallascounty.org/department/countyclerk/foreclosures.php (providing foreclosure notices for only the preceding three months).

[6] Although Appellants contend "there was no Notice of Substitute Trustee's Sale actually filed on July 11, 2011," Appellants never produced any evidence to support such assertion. Mr. Olson's affidavit was changed from July 11 to July 12 **only with regard to the execution date of the affidavit**. No substance or content of the the affidavit was changed. The affidavit still
(Continued . . .)

18

A party is bound by its pleadings. *Tieuel v. S. Pac. Transp. Co.,* 654 S.W.2d 771, 774 (Tex.App.—Houston [14th Dist.] 1983, no writ). If a party's pleadings contain judicial admissions negating a claim or defense, the court may find such pleadings to be proper summary judgment proof, from which summary judgment may be properly granted. *San Antonio Masonry & Tool Supply, Inc. v. Epstein & Sons Int'l,* 281 S.W.3d 441, 446 (Tex.App.—San Antonio 2005, no pet.).

Centura was, therefore, entitled to judgment for wrongful foreclosure as a matter of law based on the clear and unequivocal judicial admission by First Bank that the notice of sale preceding the foreclosure designated the wrong location for the foreclosure sale. The improper notice of sale, stating the wrong location for the subsequent foreclosure sale, is a clear defect in the foreclosure proceedings that rendered the foreclosure wrongful.

### C. Summary Judgment was proper in light of the Trial Court's Order Granting Centura's Summary Judgment on Appellants' Counterclaims.

In its Counterclaim, First Bank sought a declaration that the foreclosure was proper and valid. Centura moved for summary judgment on First Bank's request for declaratory relief, because First Bank's Counterclaim affirmatively disclosed

---

(Continued . . .)

states that on July 11, 2011, Mr. Olson posted the foreclosure notice, and that on July 11, 2011, Mr. Olson filed the foreclosure notice. [CR 1089-90]

19

the invalidity of its claim. As detailed herein and in Plaintiff's original motion for summary judgment, First Bank's admission that the notice of foreclosure stated the wrong location for the foreclosure and conclusively established that the foreclosure was wrongful. The Trial Court agreed with Centura. After hearing, the Trial Court entered an Order Granting Counter-Defendant and Third-Party Defendants' Motion for Summary Judgment (the "Order"), which stated:

> The Court finds that Counter-Defendant and Third-Party Defendants' Motion should be, and hereby is, GRANTED.
>
> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Counter-Defendant and Third-Party Defendants' Motion be, and hereby is, GRANTED in its entirety.

The Order granted Centura's original motion for summary judgment in its entirety, including its request to dismiss First Bank's action for declaratory relief on the sole ground of First Bank's binding judicial admissions in this matter. In granting Centura's motion, the Trial Court rejected First Bank's argument that the statement in First Bank's pleading was a mere "single phrase in [First Bank's] counterclaims." The judicial admission that the notice of sale designated the incorrect location was restated in First Bank's Counterclaim at least twice, as well as in First Bank's original responses to discovery in this matter.

In granting Centura's motion, the Trial Court also rejected First Bank's contention that the judicial admission statement is not clear because such statement

20

uses the term "notice of sale." First Bank contended "there is no document within the foreclosure process known simply as the 'notice of sale.'" The *Texas Property Code* has specific requirements for the notice that must be provided prior to a nonjudicial foreclosure sale. Pursuant to the *Texas Property Code*, such notice is called the "notice of sale,"[7] which is the same term that was used by First Bank in its judicial admissions contained in First Bank's Counterclaim.

Finally, in granting Centura's motion, the Trial Court necessarily rejected First Bank's contention that all parties knew that the judicial admission statement was an error and that Centura "knew First Bank was referring to the Trustee's Deed." This argument, like First Bank's other arguments, is without merit. First, the term "notice of sale" means only the document whereby the mortgagee, or a mortgage servicer acting on its behalf, gives notice to the debtor and the third party public of its intention to sell certain property at a nonjudicial foreclosure sale. *See Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674–75 (Tex. 1987) (stating the statutory notice provisions of Section 51.002 seek to "adequately

_____

[7] *See* TEX. PROP. CODE § 51.002(a) ("the **notice of sale** must designate the area where the sale covered by that notice is to take place, and the sale must occur in that area" (emphasis added)); § 51.002(c) ("The sale must begin at the time stated in the **notice of sale** . . . ." (emphasis added)); § 51.002(d) ("the entire calendar day on which **notice of sale** is given under Subsection (b) is excluded in computing the 20-day notice period" (emphasis added)); § 51.0022 ("A person filing a **notice of sale** of residential property under Section 51.002(b) must submit to the county clerk a completed form that provides the zip code for the property." (emphasis added)).

inform the third party public in order to maximize the likelihood of a profitable public sale at market value in which the debtor may recover his equity in his property"). In addition, in First Bank's Counterclaim, First Bank stated the "notice of sale" designated the "south entrance" for the foreclosure. The Trustee's Deed, on the other hand, not only designated the wrong entrance, but a completely different building. Therefore, when making its judicial admission that referred to the "notice of sale," First Bank could not have been referring to the Trustee's Deed.

In entering the Order Granting Counter-Defendant and Third-Party Defendants' Motion for Summary Judgment, the Trial Court necessarily found that by the unequivocal assertions of fact made by First Bank in this matter, First Bank judicially admitted there were irregularities in the foreclosure process. Appellants were thus precluded from attempting to introduce evidence that contradicts the admission that the notice designated the wrong location. "In cases involving summary judgments, the trial court cannot consider affidavits offered by the nonmovant to contradict the deemed admissions." *Beasley v. Burns,* 7 S.W.3d 768, 770 (Tex.App.—Texarkana 1999, pet. denied) (citing *Masterson v. Hogue,* 842 S.W.2d 696, 697 (Tex.App.—Tyler 1992, no writ); *Cherry v. North Am. Lloyds of Tex.,* 770 S.W.2d 4, 6 (Tex.App.—Houston [1st Dist.] 1989, writ denied)). Thus, "admissions [are] the controlling evidence before the trial court at

the hearing on the motion for summary judgment, and the court could not properly have considered affidavits that attempted to controvert those admissions." *Beasley,* 7 S.W.3d at 770. Accordingly, summary judgment in favor of Centura was proper and supported the Trial Court's declaration in the Final Judgment that the foreclosure was void.[8]

### D. The Trustee's Deed also recites that the foreclosure sale was conducted at the wrong location.

On or around August 2, 2011, Defendant David Garvin, purporting to act pursuant to Bank Of Weatherford and First Bank's directives, putatively foreclosed the property at a nonjudicial foreclosure sale. In connection with the foreclosure, Garvin purportedly sold the Property to First Bank as the highest bidder for a bid price of $6,500,000.00 and caused a Substitute Trustee's Deed to be filed and recorded in the Dallas County real property records as Instrument No. 201100212856 (the "Trustee's Deed").

The Deed of Trust and the *Texas Property Code* require foreclosures to take place at the area outside on the **north side** of the George Allen Courts Building

---

[8] *See In re Cunningham*, 2008 Bankr. LEXIS 1290, at \*18 (N.D. Tex. Bankr. May 1, 2008) ("[A]n action for wrongful foreclosure pursuant to the *Texas Property Code* is properly brought as an action under the [Texas Uniform Declaratory Judgment Act]." (citing TEX. CIV. PRAC. & REM. CODE §§ 37.001–37.011; *Cadle Co. v. Ortiz*, 227 S.W.3d 831, 837–38 (Tex. App.—Corpus Christi 2007, pet. denied)).

facing Commerce Street below the overhang. As established above, the foreclosure notice stated that the foreclosure would take place at the **south** entrance, which is the wrong location. However, further, the sworn Trustee's Deed also recited that the putative foreclosure of the property was conducted at the "**south entrance** to the Government Center in Dallas, Dallas County, Texas," **which is also the wrong location** (wrong entrance and wrong building). *After* Centura filed suit, Garvin filed a "Correction Substitute Trustee's Deed" purporting to attempt to change the location of the sale to the area outside on the north side of the George Allen Courts Building facing Commerce Street below the overhang.

Appellants' attempt to characterize the sworn statement in the original Trustee's Deed as a "scrivener's error" is unavailing. First a "scrivener's error" can only be a *minor* mistake or inadvertence. *See Packard Transport, Inc. v. Dunkerly,* No. 14-09-00652-CV, 2010 Tex.App. LEXIS 4984 at *11 (Tex.App.—Houston [14th Dist.] July 1, 2010, no pet.) (mem. op.) (citing Black's Law Dictionary 582 (8th ed. 2004). And, any "scrivener's error" is construed against the drafter. *Terrill v. Tuckness,* 985 S.W.2d 97, 106 (Tex.App.—San Antonio 1998, no pet.) (op. on rehearing). In the present case, the recital in the original Trustee's Deed has a *major* effect, and thus is not a minor mistake, and actually is consistent with First

Bank's binding judicial admission of notice of the sale taking place at the wrong location.

The Fort Worth Court of Appeals holding in *Green v. Ransor, Inc.,* 175 S.W.3d 513 (Tex.App.—Fort Worth 2005, no pet.) demonstrates the *major* effect that such small differences in a party's pleadings and sworn testimony necessarily have, which prevent consideration of efforts to contradict. In *Green,* the court held –

> Appellant notes that the accident report contains conflicting information regarding when the accident occurred; part of the report shows the accident occurred around 9:30 a.m. while another part shows the accident occurred around 9:30 p.m. Appellant argues that this conflict created a fact issue that should have precluded summary judgment against him on his negligence claim because the timing of the accident would determine whether it occurred during the workday or after hours. However, appellant alleged in his petition that the accident occurred around 9:30 p.m. An assertion of fact, not pled in the alternative, in the live pleadings of a party is regarded as a formal judicial admission, which bars the admitting party from later disputing the admitted fact. Therefore, **appellant may not argue now that a fact issue exists as to whether the accident occurred around 9:30 a.m. or 9:30 p. m., having earlier alleged in his petition that the accident occurred around 9:30 p.m.**

*Id.* at 517-18 [emphasis added].

Appellants were thus precluded from attempting to create their own fact issue, after suit was filed, by then having Mr. Garvin attempt to swear another Correction Substitute Trustee's Deed, purportedly changing the location of the foreclosure, contrary to First Bank's binding judicial admission.

25

"Texas courts have consistently held that the terms set out in a deed of trust must be strictly followed." *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) (citing *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671 (1942); *Michael v. Crawford*, 108 Tex. 352, 193 S.W. 1070 (1917)); *see also UMLIC VP LLC v. T&M Sales & Envtl. Sys.*, 176 S.W.3d 595, 609-10 (Tex. App.—Corpus Christi 2005, pet. denied) ("For a sale under a deed of trust to be valid, the terms set out in the deed of trust must be strictly followed. . . . Failure to properly foreclose on property gives rise to a cause of action for either the return of the property or damages."); *Univ. Sav. Ass'n*, 644 S.W.2d at 706 ("Failure to follow the terms of the deed of trust will give rise to a cause of action to set aside the trustee's deed."). "Because a trustee's power to sell the property is derived from the deed of trust and statute, ***strict compliance*** with these requirements is considered a prerequisite to the trustee's right to make the sale." *Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 252 S.W.3d 605, 615 (Tex. App.—Austin 2008) (emphasis added), *rev'd on other grounds*, 300 S.W.3d 746 (Tex. 2009). "Thus, a trustee must strictly pursue the terms of the instrument, the provisions of law relative to such a sale, and the details prescribed as to the manner of the sale." *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996, no writ).

"**Failure to comply with [the statutory] prerequisites strips the trustee of his authority to sell the property and will render the foreclosure sale <u>void</u>. When a foreclosure sale is void, title to the property does not pass to the purchaser, as he cannot acquire it**." *Durkay v. Madco Oil Co.,* 862 S.W.2d 14, 16 (Tex.App.—Corpus Christi 1993, writ denied) [emphasis added]. In *G4 Trust v. Consolidated Gasoline, Inc*., No. 02-10-00404-CV, 2011 Tex.App. LEXIS 7158 (Tex. App.—Fort Worth Aug. 31, 2011, pet. denied), a notice of foreclosure sale omitted the address of the trustee and substitute trustee. Citing the requirement that notice provisions be strictly complied with, the court invalidated the foreclosure sale based on said omission, stating: "**[W]e are constrained to hold that the sale is void because strict compliance is required to invoke power of sale under a deed of trust**." *Id.* at *3.

Similarly, in *Diversified, Inc. v. Walker*, 702 S.W.2d 717 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.), the Houston Court of Appeals held: "In the instant case, since the conditions and limitations on the trustee's power to convey the land were never fulfilled, such power never lawfully came into being, and the foreclosure sale and trustee's deed were therefore <u>void</u>." *Id.* at 721 [emphasis added]. Also, in *Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940 (Tex. App.—Corpus Christi 1988, writ denied), the court held: "The bank's failure to send notice by certified mail as required by law and as required by the deed of trust was

27

sufficient reason for the trial court to set aside the foreclosure sale of the real property. Therefore, we find the evidence supports the trial court's judgment that the foreclosure sale of the real property subject to the deed of trust was **void**." *Id.* at 942 [emphasis added] (citing *Univ. Sav. Ass'n*, 644 S.W.2d at 706; *Tamplen v. Bryeans*, 640 S.W.2d 421, 422 (Tex. App.—Waco 1982, writ ref'd n.r.e.)).

Appellants were barred from attempting to introduce their own inconsistent sworn statements in an effort to create their own fact issue, and in contradiction to binding judicial admissions. "In cases involving summary judgments, the trial court cannot consider affidavits offered by the nonmovant to contradict the deemed admissions." *Beasley v. Burns,* 7 S.W.3d 768, 770 (Tex.App.—Texarkana 1999, pet. denied) (citing *Masterson v. Hogue,* 842 S.W.2d 696, 697 (Tex.App.—Tyler 1992, no writ); *Cherry v. North Am. Lloyds of Tex.,* 770 S.W.2d 4, 6 (Tex.App.—Houston [1st Dist.] 1989, writ denied)). Thus, "admissions [are] the controlling evidence before the trial court at the hearing on the motion for summary judgment, and the court could not properly have considered affidavits that attempted to controvert those admissions." *Beasley,* 7 S.W.3d at 770. Thus, the competent summary judgment evidence established as a matter of law that the sale did not take place at the area outside on the north side of the George Allen Courts Building facing Commerce Street below the overhang, which is the required location under the Deed of Trust and the *Texas Property Code*. As a result, Appellants failed to

28

adhere to the terms of the Deed of Trust and the *Texas Property Code*, and the foreclosure was, as a matter of law, **<u>void</u>**. Accordingly, summary judgment in favor of Centura was proper and supported the Trial Court's declaration in the Final Judgment that the foreclosure was void.

### E. It gets better….First Bank's own President testified by Affidavit that the Foreclosure was on the south side.

Dated October 3, 2013, the President of First Bank, Greg Garland, signed an Affidavit under oath and testifying that the "facts stated in this affidavit are within my personal knowledge and are true and correct." [CR 1247-1249]  This Affidavit was filed by Appellants as part of their Response to Centura's Motion for Summary Judgment as to liability for wrongful foreclosure.   Consistent with First Bank's binding judicial admission, Mr. Garland testified that the Foreclosure Notice designated the south side as the location for the foreclosure sale.  Mr. Garland further swore under oath that the foreclosure was then conducted at the south side.  [CR1248-49 "The Notice of Substitute Trustee's Sale . . . citing the correct location as the south side of the George Allen courts building.  The sale was then conducted on August 2, 2011, at the correct location: the south side of the George Allen courts building."]

29

Appellants' continued attempts to characterize such sworn statements as "scrivener's errors" is unavailing. As mentioned previously, a "scrivener's error" can only be a *minor* mistake or inadvertence. *See Packard Transport, Inc. v. Dunkerly,* No. 14-09-00652-CV, 2010 Tex.App. LEXIS 4984 at *11 (Tex.App.—Houston [14th Dist.] July 1, 2010, no pet.) (mem. op.) (citing Black's Law Dictionary 582 (8th ed. 2004). And, any "scrivener's error" is construed against the drafter. *Terrill v. Tuckness,* 985 S.W.2d 97, 106 (Tex.App.—San Antonio 1998, no pet.) (op. on rehearing). In the present case, the (continued) sworn statements have a *major* effect, and thus cannot be dismissed as a minor mistake, and such sworn testimony is actually consistent with First Bank's binding judicial admission of notice of the sale taking place at the wrong location. Appellants were thus precluded from attempting to create their own fact issue by then attempting to proffer evidence contrary to First Bank's binding judicial admission and numerous sworn statements by Appellants' own witnesses and officers.[9]

---

[9] Particularly, Mr. Garland's later Affidavit attempted to swear under oath that he essentially lied when he provided the testimony of his earlier sworn affidavit testimony under oath that the facts stated therein were within his personal knowledge. *See Bonilla v. State,* 933 S.W.2d 538, 539 (Tex. App.—Houston [1st Dist.] 1995, no writ) (upholding a conviction for perjury when defendant admitted that his previous statement was not based on personal knowledge).

Appellants contend the Affidavits of Mr. Garland and Mr. Garvin are not binding against Appellants. In support of such argument, Appellants argue the affidavits are not judicial admissions, but testimonial declarations or quasi-admissions. For a quasi-admission to be treated as a judicial admission, the testimony must meet a five-factor test set forth in *Griffin v. Superior Insurance Co.*, 161 Tex. 195, 338 S.W.2d 415, 419 (Tex. 1960). Appellants assert the statements in the Affidavits of Mr. Garland and Mr. Garvin fail to meet the five-factor test and therefore are not binding against Defendant.

First, courts distinguish between statements of the parties and judicial admissions contained in pleadings. *Schanzle v. JPMC Specialty Mortg. LLC*, No. 03-09-00639-CV, 2011 Tex. App. LEXIS 1748, at *18-19 (Tex. App.—Austin Mar. 11, 2011, no pet.) (mem. op.) ("JPMC's motion for summary judgment **and supporting affidavit** represent a judicial admission that the principal balance was $37,087.95 as of December 31, 2008.") [emphasis added]). Statements that are contained within pleadings or affidavits or other supporting evidence in support of a party's motion for summary judgment or a response to a motion for summary judgment are judicial admissions and are binding against a party without regard to whether they meet the five-factor test.

The Affidavits of Mr. Garland and Mr. Garvin were attached to Appellants' Response to Plaintiff's Motion for Partial Summary Judgment and incorporated

therein. The supporting affidavits are binding judicial admissions of Appellants. The five-factor analysis with regard to testimonial declarations is not applicable to judicial admissions in pleadings. *In re A.E.A.*, 406 S.W.3d 404, 411 (Tex. App.—Fort Worth 2013, no pet.). Therefore, Appellant's Counterclaim, the statements in the Affidavit of Mr. Garvin, and the statements in the Affidavit of Mr. Garland are judicial admissions and are binding against Appellants.

Regardless, if the affidavit statements are somehow determined not to be judicial admissions, and instead treated as quasi-admissions, these statements by Mr. Garvin and Mr. Garland satisfy the requirements set forth in *Griffin*. Without question, the Appellants' agents made these affidavit statements in the course of a judicial proceeding (i.e. a summary judgment proceeding a.k.a. a trial on paper) and such statements were contrary to Appellants' position that the Foreclosure was proper. The statements were clear, deliberate, and unequivocal. In fact, Appellants' agents prepared and made the statements with the approval and assistance of counsel. Without question, the statements in Appellant's Counterclaim, the Affidavit of Mr. Garvin, and the Affidavit of Mr. Garland are judicial admissions that are binding on Appellants.

Appellants were barred from attempting to introduce their own inconsistent sworn statements in an effort to create their own fact issue, and in contradiction to binding judicial admissions. *Beasley v. Burns,* 7 S.W.3d 768, 770 (Tex.App.—

32

Texarkana 1999, pet. denied) (citing *Masterson v. Hogue,* 842 S.W.2d 696, 697 (Tex.App.—Tyler 1992, no writ); *Cherry v. North Am. Lloyds of Tex.,* 770 S.W.2d 4, 6 (Tex.App.—Houston [1st Dist.] 1989, writ denied)). Thus, "admissions [are] the controlling evidence before the trial court at the hearing on the motion for summary judgment, and the court could not properly have considered affidavits that attempted to controvert those admissions." *Beasley,* 7 S.W.3d at 770. Thus, the competent summary judgment evidence established as a matter of law that the sale did not take place at the area outside on the north side of the George Allen Courts Building facing Commerce Street below the overhang, which is the required location under the Deed of Trust and the *Texas Property Code*. As a result, Appellants failed to adhere to the terms of the Deed of Trust and the *Texas Property Code*, and the foreclosure was, as a matter of law, **void**. Accordingly, summary judgment in favor of Centura was proper and supported the Trial Court's declaration in the Final Judgment that the foreclosure was void.

## III. The Issue of Denying Appellants Leave to Amend

Specifically in relation to Centura's Motion for Summary Judgment against Appellants' Counterclaim and Third-Party claims, wherein a ground asserted was the judicial admissions made by Appellants in their First Amended Third-party Claims and Counterclaim, the Trial Court, on June 7, 2013, entered its Amended

33

Scheduling Order which reflected that the deadline for filing amended pleadings had already passed. [CR 595] Shortly thereafter, on June 26, 2013, First Bank attempted to file, without leave of court, its Second Amended Third-Party Petition and Counterclaim. [CR 770] On June 27, 2013, the Trial Court entered its Order granting Centura (and the individual third-party defendants) summary judgment against all of Appellants' third-party claims and counterclaims. [CR 801]

*Thereafter,* merely six weeks before the scheduled trial date, and after the deadline set by the Trial Court's scheduling order, Appellants first sought leave of court to file amended pleadings, specifically a Second Amended Answer. [CR 812, 817] In such proffered amended answer, Appellants did not seek to change their general and verified denials, or to add any affirmative defenses, but instead sought only to add a "Facts" section to their answer, attempting to plead as "facts" statements which actually *did not* contradict their previous judicial admissions (and which were a ground upon which summary judgment against Appellants' counterclaims was asserted and granted), but which only asserted the foreclosure sale took place on the north side of the courthouse. *Id.* Such proffered amended answer did not contradict that the sworn Substitute Trustee's Deed indeed stated that the sale had taken place at the wrong side of the wrong building; but instead only asserted that a Correction Substitute Trustee's Deed had been executed. *Id.*

On September 9, 2013, Centura filed its Response regarding Appellants' motion for leave to amend pleadings, opposing such motion and pointing out to the Trial Court that such request was a "backwards attempt to amend its Counterclaim," which the Trial Court had already granted Centura summary judgment. [CR 1052] After hearing on the motion, on September 12, 2013, the Trial Court entered its Order Denying Defendants' First Amended Motion for Leave to Amend Pleadings. [CR 1056]

A trial court has wide discretion to manage its docket and the appellate courts will not interfere with the exercise of that discretion without a showing of clear abuse. *In re Estate of Henry,* 250 S.W.3d 518, 526 (Tex.App.—Dallas 2008, no pet.) (citing *Roskey v. Cont'l Cas. Co.,* 190 S.W.3d 875, 879 (Tex.App.—Dallas 2006, pet. denied). An abuse of discretion occurs when the trial court acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding rules or principles. *Gunn v. Fuqua,* 397 S.W.3d 358, 377 (Tex.App.—Dallas 2013, pet. denied).

In this case, it was not a clear abuse of discretion to deny Appellants leave to amend their Answer in such a way as to attempt to re-interject an issue in the case that had already been ruled upon by the Trial Court in summary judgment, and essentially breathe life back into Appellants' Counterclaim which the Trial Court had already dismissed. To do so, would have been prejudicial. *See Bagwell v.*

*Ridge at Alta Vista Invs. I, LLC*, 440 S.W.3d 287, 293 (Tex.App.—Dallas 2014, pet. filed).

## IV. The "Tender" Issue

As part of its Final Judgment, the Trial Court declared that the Deed of Trust, as a matter of law and equity, could be released with a payment of $7,000,000 by Centura, if paid into the registry of the court[10], by a date certain. Appellants reliance upon assertions of "inadequate tender" are unavailing.[11]

On December 30, 2013, Centura filed its Supplement to Plaintiff's Original Petition, specifically adding a tender, as follows –

> Plaintiff pleads that it has unconditionally tendered the indebtedness secured by the Deed of Trust to Defendant First Bank. In the alternative, Plaintiff pleads that it has constructively tendered the balance of the secured debt to Defendant First Bank. Plaintiff further offers to do whatever equity the court requires of it in connection with this suit. In the event the Honorable Court determines that any further sum is due or is to become due the holder under such Note and Deed

---

[10] Payment into the registry was the result of the Trial Court's recognition that there were competing claims by First Bank and Parkway Inwood to any such funds.

[11] Actually, the entire "tender" issue presented by Appellants is rather a red herring. "The law is well settled that formal tender is excused when the tenderor is able to pay and the tenderee has signified unwillingness to accept the money." *Modern Aero Sales, Inc. v. Winzen Research, Inc.,* 486 S.W.2d 135, 140 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). In this case, there is no doubt that Centura's tender was refused. [CR 2075, Affidavit of K. Wells ¶ 10 "On or around February 10, 2014, Shamoun & Norman, LLP, as counsel for Plaintiff, was notified by counsel for Defendants that Defendant was not and would not accept Plaintiff's tender of $7,000,000.00."

of Trust and by virtue thereof, Plaintiff stands ready, willing and able and here now offers to deposit such further sums for payment to the holder as law and equity may require, in accordance with the judgment of this Honorable Court. A true and correct copy of correspondence evidencing such tender is attached hereto as **Exhibit A**.

[CR 1603] [emphasis in original]  Such pleading was made in order to make a valid tender according to the Texas Supreme Court's guidance in *Burkhardt v. Lieberman*, 138 Tex. 409, 418, 159 S.W.2d 847 (Tex. 1942), wherein the court stated --

> With the Burkhardts alleging a tender of whatever amount the court should determine necessary to reimburse Lieberman and ***offering "to do whatever equity the court requires of them in connection with this suit*** ," we believe they made such an offer to do equity as that their pleading amounted to a tender. . . . [T]hat phase of the case is reversed and remanded to the trial court with instructions to determine the amount of principal and interest due on this note and to give the Burkhardts reasonable opportunity to perform on their tender. If they then fail so to perform that court will enter judgment quieting the title in Lieberman as to the 25 acres as prayed by him.

*Id.,* 159 S.W.2d at 417 [emphasis added].  In *Burkhardt*, the above tender was not alleged in the petition, but was made in a reply to a pleading.

In addition to Centura's pleadings, on December 30, 2013, Centura notified Appellants that Centura was ready, willing, and able to immediately tender the indebtedness secured by the Property. [CR 1607, 1616]  Thus, Centura made a legally effective tender, entitling Centura to redeem the Deed of Trust and recover title to the Property, should the Trial Court order so.

37

And the Trial Court did order so. More importantly, because Appellants did not supersede the Final Judgment, Centura met the requirements of execution set forth by the Trial Court's Final Order and deposited $7,000,000 into the registry of the court, releasing the Deed of Trust. [CR Supp 2, p.109-110; 113-17]

In fact, the payment made by Centura exceeded the amount Appellants sold the property to Parkway Inwood for post-foreclosure. Accordingly, because Appellants did not supersede execution of the judgment, title to the property was quieted in Centura, and although the court of appeals could still address the substantive issue of the validity of the foreclosure, Appellants' remedy, if successful on appeal, is necessarily limited to receiving the funds paid by Centura into the registry of the court.

Importantly, as to the issue of the Trial Court's determination and declaration that $7,000,000 would release the Deed of Trust, Appellants produced no competent summary judgment evidence to contradict the express provision stated in the Deed of Trust that "[t]he lien of this Deed of Trust shall not exceed at any one time $7,000,000.00." [CR 69] In fact, Appellants failed to submit any competent evidence of any amount Appellants contended was owed. As a result, Appellants failed to to raise a genuine issue of material fact.

## V. The Attorney's Fee Award Issue

Appellants assert that the Trial Court erred in awarding Centura attorney's fees in the Final Judgment, pursuant to the Declaratory Judgment Act ("DJA"). Appellants, however, do not dispute that Centura brought claims of wrongful foreclosure, seeking through the DJA a declaration that the foreclosure was void *ab initio*. Further, Appellants do not dispute that Centura sought, pursuant to the DJA, declaration that $7,000,000 was the amount to release the Deed of Trust. Instead, Appellants argue that Centura's claims were improperly sought under the DJA.

Appellants' reliance upon *Wells Fargo Bank, N.A. v. Robinson,* 391 S.W.3d 590, 594 (Tex.App.—Dallas 2012, no pet.) is inapposite. In that case, the court of appeals found the claims duplicative because the wrongful foreclosure suit was particularly one where the debtor retained possession after the foreclosure sale, Robinson did not present any evidence of a compensable injury, and the trial court's judgment did not award any declaratory relief. *Id.* In *Robinson,* the recovery of damages was not appropriate because title to the property had not passed to a third party and the borrower's possession of the property had not been materially disturbed. *Id.* The court noted that Robinson's petition did not directly request that the foreclosure sale be set aside. *Id.* Accordingly, the appropriate remedy in such case where the holder obtains title to the property at the foreclosure sale and the borrower retains possession, is to set aside the trustee's deed and to

restore the borrower's title, subject to the note holder's right to establish the debt owed and foreclose its lien. *Id.* The current case is completely distinguished from *Robinson.*

Instead, courts have held that the DJA is an appropriate vehicle through which to pursue a wrongful foreclosure claim, where the validity of the foreclosure requires the ascertainment and construction of the documents. *Cadle Co. v. Ortiz,* 227 S.W.3d 831, 837 (Tex.App.—Corpus Christi 2007, pet. denied) (court of appeals affirmed where plaintiff filed suit alleging wrongful foreclosure and seeking attorney's fees under the DJA); *Holly Park Condo. Homeowners' Assoc., Inc. v. Lowery,* 310 S.W.3d 144, 145 (Tex.App.—Dallas 2010, pet. denied) (court of appeals affirmed where plaintiff sued for wrongful foreclosure and sought declaratory judgment finding the non-judicial foreclosure void and attorney's fees were awarded). Accordingly, the Trial Court did not abuse its discretion in awarding Centura attorney's fees pursuant to the DJA.

Further, although Appellants complain that any attorney's fees award must be "reasonable," Appellants have presented no argument, record citation, or analysis regarding the reasonableness of the award, particularly in light of the express fact that the parties agreed to submit the attorney's fees issue to the Trial Court on written submission alone, without argument. [CR Supp. Vol. I, p. 274]

## VI. Appellants' Motion for Contempt

On February 4, 2015, Appellants filed (wrongfully) within this appellate case number, a Petition for Writ of Injunction and Motion for Contempt. On February 11, 2015, Centura filed its Motion to Strike and Unfile Appellants' Petition for Writ of Injunction and Motion for Contempt, asserting that Appellants' new counsel having filed such original proceeding within the current case, as well as the extensive *non sequitur* briefing contained in the putative Petition, was an unauthorized attempt to further brief, or re-brief, Appellants' case long after Appellants' brief had been filed in this cause. Further, consideration of such briefing by the appellate panel in this case would wrongfully taint the integrity of the appellate process. Regardless, on February 13, 2015, the Court issued its Order denying the requested injunction, but ordering Centura to respond herein (in its Appellee Brief) to the Motion for Contempt.[12]

Simply, Centura cannot be in contempt for having executed on an final

---

[12] Appellee re-urges its Motion to Strike and Unfile the wrongfully filed original proceeding and Motion for Contempt. Essentially, although the Motion for Contempt is based upon the (erroneous) assumption that Appellants were not required to, or did not need to, suspend execution of the Trial Court's Final Judgment, consideration of the wrongly-filed briefing contained in Appellants' Petition for Writ of Injunction and Motion for Contempt will nonetheless result in the appellate panel considering the unauthorized re-briefing of Appellants' brief by new counsel, and thus further result in the appearance of taint of the integrity of the appellate process of which Centura has complained.

judgment while on appeal when such judgment was never superseded as required by Texas law.

Generally, as in this case, a judgment is final when the trial court's power to alter the judgment has ended, and execution on the judgment, if appealed, has not been superseded. *Street v. Second Court of Appeals,* 756 S.W.2d 299, 301 (Tex. 1988). Further, "A judgment which is not superseded can, of course, be executed upon regardless of its appellate status. *Id.* Indeed, "[T]he successful party to a judgment has a right, as a matter of law, to enforce the judgment where no supersedeas bond has been filed or approved." *Merrell v. Fanning & Harper*, 597 S.W.2d 945, 950 (Tex. Civ. App.—Tyler 1980, no writ). Furthermore, "[i]t has long been the rule in this state that execution which has been issued on a judgment that has not been stayed or superseded will support the title acquired by a stranger to the proceedings even though the judgment is subsequently reversed." *Id*. at 952. The Texas Supreme Court has expressly recognized that "A trial court has an affirmative duty to enforce its judgment," and "Our procedural rules allow a judgment debtor to supersede a judgment, thereby suspending enforcement, by posting security set by the trial court, not by merely filing an appeal." *In re Crow-Billingsley Air Park,* 98 S.W.3d 178, 179 (Tex. 2003, orig. proceeding) (per curiam); *In re Romero, Gonzalez & Benavides, L.L.P*., 293 S.W.3d 662, 664 (Tex.

App.—San Antonio 2009, orig. proceeding) (citing TEX. R. APP. P. 24.1, 24.2(a)(3).

Appellants' Motion for Contempt is solely based upon an erroneous assertion that Appellants were not required to supersede the Trial Court's Final Judgment, and thus suspend enforcement, because (1) the judgment was purely declaratory; and (2) a non-party "participant" in the loan is a national bank. Both assertions are inapposite and not founded upon either the true facts or the applicable law.

**(a) <u>The Final Judgment Was Not Purely Declaratory.</u>**

In arguing that the Trial Court's Final Judgment was purely declaratory, Appellants mistakenly focus only upon the *pleadings* in the case and not the Trial Court's actual Final Judgment. Appellants' obligation was to supersede, and thus suspend enforcement of, the *judgment* not the parties' pleadings. Appellants rely upon a partial, and inevitably misleading, quotation from *In re Marriage of Richards,* 991 S.W.2d 30, 32 (Tex.App.—Amarillo 1998, no pet.) for the proposition that a declaratory judgment is suspended automatically when the appeal is perfected. In fact, in *In re Richards,* a divorce case, the Amarillo Court of Appeals noted that "[W]hen supersedeas is not available because the decree is declaratory, such as a divorce judgment, the common law rule that the judgment is suspended when the appeal is perfected is applicable." *Id.* (citing *Cooper v.*

*Cooper,* 21 S.W.2d 70, 71 (Tex.Civ.App.—Dallas 1929, no writ) ("[I]f an appellant has the right of a supersedeas bond and fails to avail himself of that right, the judgment can be executed, notwithstanding he has perfected an appeal. If, however, he has no right of supersedeas bond, the rule at common law is in force and an appeal from the judgment does suspend proceedings under such judgment. A familiar example of this rule is seen in judgments for divorce."). More importantly, however, is the *In re Richards* court's recognition that a declaratory judgment which <u>solely</u> declares the status of the parties, and has no execution element or performance element, is capable of being superseded by notice of appeal alone. *In re Richards,* 991 S.W.2d at 32 ("When, as here, the judgment merely approves a property division agreement entered into by both parties and does not provide for the recovery of money or property in the possession of the other party, there really is nothing for Donald to execute nor is there any reason Teresa would have any need to supersede an attempt by David to execute on the divorce decree.").[13]

The Texas Supreme Court has expressly rejected Defendants' proposition, holding that a declaratory judgment is enforceable during appeal if the appellant

---

[13] The *In re Richards* court further recognized that "In the type of judgment before us which simply declares the status of the parties and divided community property, there was no judgment for Teresa to perform." *In re Richards,* 991 S.W.2d 30, 31 (Tex.App.—Amarillo 1998, no writ).

44

does not file a supersedeas bond. *In re Crow-Billingsley Air Park, Ltd.*, 98 S.W.3d 178, 178-79 (Tex. 2003) (orig. proceeding) (per curiam). Rule 24.2 of the *Texas Rules of Appellate Procedure* specifically provides as follows:

> When the judgment is for the recovery of an interest in real or personal property, the trial court will determine the type of security that the judgment debtor must post. The amount of that security must be at least: . . . the value of the property interest's rent or revenue, if the property interest is real.

TEX. R. APP. P. 24.2(2); *see also Amalgamated Transit Union, Local Div. 1338 v. Dallas Pub. Transit Bd.*, 430 S.W.2d 107, 120 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.).

In the present case, the Trial Court's Final Judgment not only included declarations that (1) the foreclosure was void as a matter of law, and (2) that $7,000,000 was the amount required to release the Deed of Trust; but, the Final Judgment indeed included a further execution, or performance, element that "upon Plaintiff's deposit of $7,000,000.00 within the registry of the Court on or before forty-five (45) days from the date this Final Judgment becomes final and enforceable, the lien on the Deed of Trust shall be released."  [CR, Supp. I, pp. 289-90]  Because, unlike in *In re Richards,* the Final Judgment included something for Centura to execute or perform, Appellants had the right and obligation to supersede the execution of the Final Judgment, pending appeal, which Appellants

45

failed to do.  As a result, Centura cannot be asserted or held to be in contempt for executing upon a Final Judgment which had not been superseded or suspended. [14]

## (b) The Bank Exemption Issue.

Second, Appellants erroneously argue that the Trial Court's Final Judgment was automatically superseded because a "participant" in the underlying loan is a national bank (who, by the way, is *not* a party to the case).  This tardy argument was first raised during the appeal, long after (and never raised) in Appellants' Brief on appeal, and long after Centura had already executed on the judgment, redeemed the Deed of Trust, and further sold the property.

First, Appellants do not explain to the Court or provide any legal support for the proposition that a "participant" in a loan who is not a party to the lawsuit, and is not a party to the judgment, somehow can be utilized to suspend execution through required supersedeas procedures.  Such assertion mistakenly appears to be tantamount to arguing that such judgment is automatically superseded if one the

---

[14] Appellants do not, and cannot, contend that the Final Judgment did not become "final and enforceable" 30 days after the Trial Court signed the judgment; and, therefore, Centura was required to execute upon the judgment with 45 days thereafter.  Nothing prevented Appellants from exercising the rights granted by TEX. R. APP. P. 24 in seeking, *in the Trial Court,* a determination of supersedeas and suspension of enforcement.  It is fairly believed that if Centura had (wrongfully) believed that Appellants' mere notice of appeal had automatically suspended the Final Judgment and not paid $7,000,000 into the registry of the court by the time stipulated, Appellants would assert that Centura was forever foreclosed from seeking execution of the release of the Deed of Trust element of the judgment.

"shareholders" of an entity is a national bank. Appellants have presented no legal support or authority for such a proposition. Further, in order to be exempt, the judgment must be one directed against the governmental subdivision claiming the statutory relief from supersedeas. *See Valerio v. Laughlin*, 307 S.W.2d 352, 353-54 (Tex. Civ. App.—San Antonio 1957, no writ). The Final Judgment in this case is not directed against the alleged national bank, First Texoma. First Texoma was not a party to the lawsuit and is not identified in the Final Judgment. Therefore, the asserted exemptions are inapplicable. *See id.* Moreover, all parties appealing from a judgment must post their own supersedeas. *See Valerio*, 307 S.W.2d at 353 ("Even if the bond filed by Ramos had been a legal one, it would not inure to the benefit of the other defendants who made no attempt to file a supersedeas bond."). Thus, even if First Texoma, another loan participant, or even another defendant were covered by exemptions, Appellants could not avail themselves of the exemptions provided thereby.

Appellants' arguments are based solely upon 12 U.S.C. § 91 and TEX. FIN. CODE §59.007(a), both which are wholly inapplicable.[15] It is important to consider

---

[15] So that it cannot be attempted to be raised later, Appellants do not try to rely upon the provision of TEX. CIV. PRAC. & REM. CODE § 6.001(b)(10), which restricts the exemption from bond or security requirements to "any national mortgage savings and loan insurance organization created by an act of congress as a national relief organization that operates on a statewide basis." This exemption recognizes that such institutions are essentially
      (Continued . . .)

47

the entire text of 12 U.S.C. § 91, so as to understand its intent to prevent *insolvency*

of national banks –

### § 91. Transfers by bank and other acts in contemplation of insolvency

All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by chapter 4 of title 62 of the Revised Statutes, or with a view to the preference of one creditor to another, except in payment of its calculating notes, shall be utterly null and void; and no attachment, injunction, or execution, shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court.

12 U.S.C. § 91. Fully considered, the purpose of the statute is to prevent national

bank insolvencies and to prevent a judgment creditor from obtaining preference

over other creditors prior to final judgment. *U.S. v. F.D.I.C.,* 881 F.2d 207, 210

(5th Cir. 1989) (citing *Third Nat'l Bank v. Impac, Ltd.,* 432 U.S. 312, 319, 97 S.Ct.

2307, 2312 (1977)); *State Bank & Trust Co. of Golden Meadow v. Boat,* 926 F.2d

449, 451 (5th Cir. 1991) ("Section 91 was enacted by Congress in 1873 to prevent

---

(Continued . . .)

performing governmental functions; and, Appellants have not made, and cannot make, any assertion that its loan "participant" is such an institution described and exempted.

48

national banks from giving preferential treatment to creditors and to assure the orderly and fair liquidation of insolvent banks.").[16]

Such interest and purpose is not at issue in this case, since the Final Judgment is not a money judgment against a national bank or a judgment threatening the solvency of a national bank. To the contrary, the judgment which Centura executed actually *paid* First Bank $7,000,000 (the full face amount of the Deed of Trust), and actually *more than* First Bank sold the property for post-foreclosure. More importantly, First Bank (and thus its national bank "participant") actually does not claim a title interest in the property. First Bank appears to claim an interest in the property only as security for the recovery of damages it may be awarded in a separately filed suit against Centura on the Promissory Note, or as against a separately filed suit brought against First State Bank by Parkway Inwood, the post-foreclosure buyer (with notice).[17] A suit

---

[16] Appellants reliance upon *State Bank & Trust Co. of Golden Meadow v. Boat,* 926 F.2d 449 (5th Cir. 1991) is inapposite because in that case the Fifth Circuit was actually construing a Louisiana statute modeled after 12 U.S.C. § 91; and, more importantly, the case involved a judgment award against the bank in the amount of $1,160,000. In other words, a judgment which the bank would be required to pay money rather than, as in the present case, where the bank is to *receive* the payment of money (and actually more money than the bank had sold the property for post-foreclosure).

[17] *Renger v. Jeffrey*, 182 S.W.2d 701, 702 (Tex. 1944) ("The proceedings in cause No. 8989 attempting to supersede the judgment in cause No. 8772 are unauthorized and void. . . .[The] rules do not authorize proceedings in one cause suspending the execution of judgment in another cause.").

seeking a lien as security to recover damages affects property collaterally, not directly. *Moss v. Tennant*, 722 S.W.2d 762, 763 (Tex. App.—Houston [14th Dist.] 1986, orig. proceeding); *Jordan v. Hagler*, 179 S.W.3d 217, 222 (Tex. App.—Fort Worth 2005, no pet.)("Jordan does not seek to recover title to the Haglers' property; he appears to claim an ownership interest in the property only as security for the recovery of damages he may be awarded on his fraud, misrepresentation, and breach of contract claims. This "is no more than a collateral interest in the property," and the lis pendens is therefore void.") (citing *Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995) (orig. proceeding); *Moss*, 722 S.W.2d at 763).

The payment by Centura of the full $7,000,000 into the registry of the court actually provided the full security of the Deed of Trust to First Bank, and thus did not, and could not, give a preference to a creditor of a national bank or threaten a national bank's solvency. Instead, Appellants' failure to supersede execution of the judgment fully paid the Deed of Trust and eliminated title to the property as an issue or remedy in the appeal. *In re Dutch Inn of Orlando, Ltd.*, 614 F.2d 504, 506 (5th Cir. 1980) (holding the failure to obtain a stay of the sale of the asset by filing a supersedeas bond has permitted the completion of the sale to the buyer to moot the appeal); *see In re Jamail*, 156 S.W.3d 104, 108 (Tex. App.—Austin 2004, orig. proceeding) ("PIB would have no superior property right to assert over

50

an innocent subsequent purchaser regardless of the outcome of its appeal on the merits.").

Further, courts have more directly addressed the present situation. Section 91 has been held to merely prevent action against bank property by creditors of the bank, it does not apply to an action by a debtor seeking to protect its own property from wrongful foreclosure. S*ee Loew's Inc. v. Superior Court of Cal.*, 301 P.2d 64, 72 (Cal. App. 1956) (finding waiver of any advantage the bank might otherwise have had under Section 91 by filing an action and taking steps to foreclose property).

And, in *U.S. v. Theos,* the federal court stated –

> Additionally, an appellate bond cannot be considered an attachment prohibited by 12 U.S.C. § 91. . . .Section 91 was not intended to interject federal control over state court appellate procedure. If Congress had so intended, it would have used more apt language to accomplish that purpose. Moreover, in the 116 years since enactment of § 91, surely some court would have applied its restrictions to an appellate court bond had Congress so intended.

*U.S. v. Theos,* 709 F.Supp. 1007, 1010-11 (D. Colo. 1989). And, in *Bank of East Texas v. Jones,* the appellant bank sought an order that it was exempt from posting a supersedeas bond in order to suspend execution of a judgment. In *Jones,* the bank argued it need not post supersedeas pursuant to 7 TEX. ADMIN. CODE § 3.27, which like 12 U.S.C. § 91 provided "No attachment, injunction, or execution against a state bank or its property shall be effective if issued before a final

51

judgment in any suit, action, or proceeding in any court." *Jones,* 758 S.W.2d 293, 294 (Tex.App.—Tyler 1988, no writ) (per curiam). Importantly, whereas in this case, First Bank (the party appellant) is a state bank, the *Jones* court held "The Texas Legislature has provided for exemptions to the requirement of supersedeas bond for suspensions of a judgment in TEX. CIV. PRAC. & REM. CODE § 6.001-.003 (Vernon 1986) for certain governmental entities. The legislature did not include state banks in the category of exempt entities." *Jones,* 758 S.W.2d at 296. Further, the *Jones* court expressly rejected 12 U.S.C. § 91 as exempting the appellant state bank from the requirement of posting supersedeas to suspend enforcement of the judgment. *Id.* ("In this case the Bank is entitled to prevent execution of the judgment by means of filing a supersedeas bond as provided by TEX. R. APP. P. 47 or by depositing a negotiable obligation in lieu of bond pursuant to TEX. R. APP. P. 48.").

Finally, Appellants' reliance upon TEX. FIN. CODE § 59.007(a) likewise, by its very unambiguous language, does not support Appellants' contentions. Specifically, § 59.007(a) provides –

> Sec. 59.007. Attachment, Injunction Execution or Garnishment.
>
> (a) An attachment, injunction, execution, or writ of garnishment may not be issued against or served on a financial institution that has its principal office or a branch in this state *to collect a money judgment or secure a prospective money judgment*

*against the financial institution* before the judgment is final and all appeals have been foreclosed by law.

TEX. FIN. CODE § 59.007(a) [emphasis added]. The language of the statute itself limits its operation to efforts to "collect money judgments against the financial institution." The Final Judgment in this case is not a money judgment against First Bank, and the execution of the Final Judgment was not to collect a money judgment against First Bank. To the contrary, it was payment of money by Centura. Further, the case relied upon by Appellants construing § 59.007(a) also demonstrates that the purpose of the statute was to prevent banks "when appealing lender liability lawsuits" from "quickly being rendered insolvent by single court decisions." *C&H Nationwide, Inc. v. Norwest Bank of Tex. N.A.,* 208 F.3d 490, 496-97 (5th Cir. 2000). The present case is not a "lender liability lawsuit" from which a money judgment was issued against First Bank, which invokes a concern of rendering First Bank insolvent. Again, to be clear, the Final Judgment at issue required Centura to *pay* $7,000,000, more than First Bank sold the property for post-foreclosure.

Although Appellants' new counsel may not have liked the fact that First Bank and its previous counsel failed to post any supersedeas to suspend enforcement of the Final Judgment, or even (appropriately) approach the Trial Court to address the issue, and although Appellants and their new counsel may not like the effect that such failure and the execution of the judgment may have

53

regarding the available remedies on appeal, Appellants were nonetheless obligated to supersede the judgment pursuant to Texas appellate rules and Centura cannot be liable for contempt by executing on a final judgment that Centura was entitled to under the law, despite the case's status on appeal.

## CONCLUSION and PRAYER

As established above, the Trial Court did not err in the entry of its Final Judgment. And, because Appellants failed to supersede execution of the Final Judgment pending appeal, the bottom line result in all instances is that there is $7,000,000.00 (more than First Bank sold the property for) waiting for First Bank in the registry of the court.

WHEREFORE, PREMISES CONSIDERED, Appellee Centura Land Corporation respectfully prays that the judgment of the Trial Court be affirmed in all respects, and or any such further relief, both at law and in equity, to which Centura may show itself justly entitled.

Respectfully submitted,


**SHAMOUN & NORMAN, LLP**
1755 Wittington Place, Suite 200, LB 25
Dallas, Texas 75234
Telephone: (214) 987-1745
Facsimile:  (214) 521-9033

By: /S/ Jonathan J. Cunningham_____
   **C. GREGORY SHAMOUN**
    State Bar No. 18089650
   **JONATHAN J. CUNNINGHAM**
    State Bar No. 00793574

**COUNSEL FOR CENTURA LAND**
**CORPORATION**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of this Appellee's Brief Appellants' counsel of record electronically on March 9, 2015.

*/s/ Jonathan J. Cunningham*
**Jonathan J. Cunningham**

<u>**CERTIFICATE OF COMPLIANCE WITH TRAP 9.4(i)(3)**</u>

I certify that this document was prepared using Microsoft Word 2010. According to its word count function, the text contains 13,853 words. The text is in 14-point font.

*/s/ Jonathan J. Cunningham*
**Jonathan J. Cunningham**